TRUSTEES OF WATTS HOSPITAL, A NORTH CAROLINA CORPORATION ; JOHN SPRUNT HILL; SARA V. WATTS MORRISON AND HUSBAND, CAMERON MORRISON; GEORGE WATTS HILL AND WIFE, ANN McCULLOCH HILL; VALINDA HILL DuBOSE AND HUSBAND, D. ST. PIERRE DuBOSE; AND FRANCES HILL FOX AND HUSBAND, HERBERT FOX, v. BOARD OF COMMISSIONERS FOR THE COUNTY OF DURHAM; R. L. BRAME, CHAIRMAN, GEORGE F. KIRKLAND, S. LeROY PROCTOR, JAMES P. McGUIRE AND CLAUDE L. STONE, MEMBERS OF THE BOARD OF COMMISSIONERS FOR THE COUNTY OF DURHAM, NORTH CAROLINA; AND THE COUNTY OF DURHAM; CITY OF DURHAM; AND A. R. WILSON, GUARDIAN AD LITEM FOR ALL PARTIES WHO HAVE OR MIGHT HAVE ANY RIGHT, TITLE OR INTEREST WHATSOEVER IN THE PROPERTY INVOLVED IN THIS CONTROVERSY, WHETHER IN ESSE OR NOT IN ESSE, KNOWN OR UNKNOWN, AS WELL AS CITIZENS, TAXPAYERS, OR OTHER INTERESTED PARTIES.

(Filed 29 March, 1950.)

**1. Trusts § 20b—**

When subsequent changes in conditions not anticipated by the creator of a trust threaten the destruction of the trust and the loss of the trust estate, a court of equity has power to modify the terms of the trust to the extent necessary to preserve the trust estate and to effectuate the primary purpose of the creator of the trust.

**2. Courts § 3a—**

The Superior Court possesses all the powers inherent in a court of equity prior to 1868.

**3. Trusts § 20b—**

Where, due to changed conditions, increase in population and charity load, and increase in operational costs, the maintenance of a charitable hospital is endangered because of lack of funds for necessary repairs and modernization, a court of equity has the power to modify the terms of the trust indenture for the hospital property and the trust endowment in order that the trustees may convey same to the county under an agreement for the perpetual operation of the hospital under the same name.

**4. Taxation § 5—**

The construction, maintenance, and operation of a public hospital by a county is a public purpose for which funds may be provided by taxation, Art. V, Section 3, of the Constitution of N. C., and bonds for this purpose may be issued upon approval of the qualified voters of the county. G.S. 131-126.23, G.S. 153, Art. 9 as amended.

**5. Hospital § 6½—**

A county which has acquired charitable hospitals has authority to execute operational leases to the trustees of the hospitals upon such terms and subject to such conditions as will carry out the purposes of G.S. 131, Art. 13B.

**6. Counties § 14—**

A county may accept deed from the trustees of a charitable hospital for the hospital property and endowment upon condition that the property be used for general hospital purposes and be operated under the same name, since notwithstanding the instrument conveys a base, qualified, or determinable fee, the estate will endure forever unless the county should voluntarily cease to use the property for hospital purposes or should voluntarily change the name of the hospital.

APPEAL by defendants from *Harris, J.,* at March Term, 1950, of DURHAM.

Civil action for modification of terms of trusts to preserve trust estates and to effectuate the primary purposes of the creator of the trusts.

The parties waived the right to a jury trial, and submitted the issues of fact as well as of law to the judge, who entered judgment as follows:

This cause coming on to be heard before the undersigned, Judge presiding over the Superior Courts of Durham County, and counsel for plaintiffs, counsel for defendants, and A. R. Wilson, Esquire, Guardian *Ad Litem,* having agreed that the Court might hear the evidence, find the facts, and render judgment thereon;

And the Court, after reading the pleadings, hearing the evidence and arguments of counsel, finds the following facts:

1. That this suit was instituted on the 13th day of March, 1950; that summonses have been served upon all of the defendants named in the title to this cause, and that answers have been filed by all of said defendants, and all of said parties are now properly before the Court.

2. That A. R. Wilson, who is found to be a suitable and discreet person, has been duly appointed guardian *ad litem* for all parties who have or might have any right, title or interest whatsoever in the property involved in this controversy, whether *in esse* or not *in esse,* known or unknown, as well as any other interested parties, and is authorized to represent such parties who may in any contingency become interested in the property referred to herein, and all parties for whom he has been appointed guardian *ad litem* are bound by the terms of this judgment.

3. That the plaintiffs are all *sui juris* and are either residents of Durham County, North Carolina, or Mecklenburg County, North Carolina, except the plaintiff corporation, Trustees of Watts Hospital, which is a nonprofit corporation organized for the purpose of conducting, operating and maintaining a hospital in the City of Durham, North Carolina, said hospital being known as Watts Hospital, which corporation was chartered by the General Assembly of North Carolina under Chapter 8 of the Private Laws of 1895; and Lincoln Hospital in the City of Durham, hereinafter referred to, is also a nonprofit corporation organized

for the purpose of conducting, operating and maintaining a hospital in the City of Durham.

4. That on the 2nd day of December, 1909, George W. Watts and wife, L. V. Watts, executed and delivered to Trustees of Watts Hospital by deed recorded in Deed Book 40, page 371, Registry of Durham County, a tract of land containing 25⅖ acres upon which is located the present hospital site of Watts Hospital; that the *habendum* clause of said deed restricted the use of said property to a hospital at which no charge for board, attention or nursing would be made to those unable to pay, and that if said property should cease for a period of six months to be used as a hospital for the sick at which board, attention and nursing would not be free to the indigent, that said land and improvements would revert to and revest in George W. Watts and his heirs.

5. That by indenture dated August 22, 1905, recorded in Deed Book 15, pages 440 and 441, Registry of Durham County, and by deed recorded in Deed Book 47 at page 48, dated April 24, 1913, Registry of Durham County, and by deed dated February 5, 1921, recorded in Deed Book 61, page 333, Registry of Durham County, George W. Watts and his wife executed and delivered to Trustees of Watts Hospital certain articles of personal property and certain tracts of real estate upon the condition that the income from said personal property and real estate be used for the benefit of a hospital at which no charge for board, attention or nursing would be made to those unable to pay, and if the terms of the various deeds of gift, which constitute what is now known as the Watts Hospital Endowment should not be complied with for a period of six months, that the articles of personal property and real estate therein conveyed to Trustees of Watts Hospital, should revert to and revest in the said George W. Watts and his heirs.

6. That George W. Watts died testate on the 7th day of March, 1921, a citizen and resident of Durham County, and his last will and testament was duly probated in Book of Wills 3, page 155, in the Office of the Clerk of the Superior Court of Durham County, North Carolina, in which will the said George W. Watts designated and named his wife, Sara V. Watts, and his daughter, Annie Louise Hill, as his residuary legatees.

7. That at the time of his death in 1921 the said George W. Watts was survived by his widow, Sara V. Watts, and his daughter, Annie Louise Hill, who constituted his sole heirs at law, and were also his sole residuary legatees as set forth in his last will and testament.

That on the 26th day of March, 1940, Annie Louise Hill died testate a citizen and resident of Durham County, North Carolina, leaving a last will and testament which was duly probated and recorded in Book of Wills 6, page 236, in the Office of the Clerk of the Superior Court of

Durham County, in which will the said Annie Louise Hill named her husband and three children, to wit: John Sprunt Hill, George Watts Hill, Valinda Hill DuBose and Frances Faison Hill (now Frances Hill Fox), as her residuary legatees; that said parties also constitute all of the heirs at law of the said Annie Louise Hill.

8. That the late George W. Watts, prior to giving the present Watts Hospital property to the Trustees of Watts Hospital, had built at his own expense a hospital on the property; that the hospital at that time had a capacity of seventy-one patient beds; that from time to time during his life Mr. Watts made other additions to the hospital, and at the time of his death in 1921 the hospital had a normal capacity of one hundred and thirty-six beds; that in 1927, through provisions made by Mr. Watts, an additional fifty beds were added, making one hundred and eighty-six; that since 1927 the normal capacity of the hospital has been increased by only seven beds, although by resorting to the expedient of lining beds up in the corridors and crowding additional beds in wards and rooms designed as supply stations, Trustees of Watts Hospital, in an effort to take care of emergency and overflow conditions, have provided accommodations for over two hundred and ninety patients, approximately one hundred more than normal capacity.

That another expedient to which Trustees of Watts Hospital have been forced to resort in order to meet increased demands has been the conversion of two adult bedrooms into a babies' ward, which contains thirty bassinets; that the toilet facilities are entirely inadequate, in that one toilet has to serve twenty-one resident staff doctors on duty all day and sixty-five regular staff doctors who make rounds once or twice a day; that another toilet has to serve for twenty-five administrative and clerical women; that there is only one toilet available for forty-three Negro maids; and that there is only one toilet available for as many as twenty patients and visitors in addition to three to eight nurses.

The initial cost of improvements on the Watts Hospital property amounts to approximately $1,500,000, although the replacement cost would be greatly in excess of this amount.

9. That at the time of the death of Mr. Watts in 1921 the Town of Durham had a population of 21,719 persons and the entire County of Durham a population of 42,219; that at the present time the population of the City of Durham has risen to approximately 75,000 to 80,000, and of the County of Durham, including the City, to 90,000 to 100,000; that this increase in population has necessarily resulted in an increase in the demands made upon Watts Hospital and the use of its facilities, which increase has been of a steady nature, as shown by "Exhibit E" attached to the complaint, which is found to correctly set forth the facts contained in said exhibit; that there has been a large increase in the

various services performed at Watts Hospital between the year 1930 and the year 1949, as shown from the following table:

|  | 1930 | 1949 | Per Centage of Increase |
|---|---|---|---|
| Normal Bed Capacity | 186 | 193 | ......... |
| In-Patients Treated | 3,563 | 10,405 | 192.0 |
| Patient Days of Care | 38,730 | 77,080 | 99.0 |
| No. of Employees, including Student Nurses | 153 | 470 | 207.0 |
| Births | 280 | 1,393 | 397.5 |
| Major Operations | 962 | 2,501 | 160.0 |
| Minor Operations | 1,724 | 5,618 | 226.1 |
| Laboratory Tests | 20,792 | 131,726 | 533.5 |
| X-Ray Patients | 1,859 | 23,745 | 1,177.3 |
| X-Ray Services | 3,947 | 32,585 | 725.6 |

10. That while the Watts endowment funds were augmented from time to time through the generosity of Mr. Watts, and while the *corpus* of these endowment funds have now grown to a point where they have a fair market value in excess of $630,000.00, the cost of the operation of the hospital has increased to such a point that the endowment funds, which in 1920 represented 14.2 per cent of the total expense of operation of the hospital, now represent only 2.8 per cent of the total expense of the operation of the hospital, although in the same period the endowment income has increased from $16,109.00 to $30,654.00; that during the same period the cost of operation of the hospital has increased from $113,447.00 to $1,109,974.00, and the average daily census of the hospital during this time has increased from 83.1 to 211.1, and the total number of patients from 2,321 to 10,405.

That the income from the endowment is now and for some years has been totally inadequate to provide free board, attention and nursing to those unable to pay for the same.

11. That on or about the 16th day of December, 1936, Trustees of Watts Hospital amended the Charter of said corporation by providing "No person shall be discharged or refused admission and attendance because of inability to pay unless the income from the Watts Hospital Endowment and other receipts for charitable purposes at such time have been exhausted."

12. That on the 14th day of May, 1938, and more than six months after said Charter had been amended as referred to under Finding of Fact No. 11, Annie Louise Hill and husband, John Sprunt Hill, and Sara V. Watts Morrison and husband, Cameron Morrison, sole heirs at law and residuary legatees of the late George W. Watts, executed and

delivered to the City of Durham and County of Durham a deed recorded in Deed Book 129, page 241, Registry of Durham County, quit-claiming and conveying to the said City of Durham and County of Durham all of their right, title and interest in and to the present Watts Hospital property and in and to the other real estate conveyed by the said George W. Watts to Trustees of Watts Hospital.

13. That on the 6th day of March, 1950, the City Council for the City of Durham unanimously passed a resolution "That the City of Durham quit-claim its interest in Watts Hospital property to the Trustees of Watts Hospital," and the City of Durham is now prepared to execute a quit-claim deed conveying any interest which it had or might have had in and to that property referred to in "Exhibit G" of the complaint, being deed from Cameron Morrison and others recorded in Deed Book 129, page 241, Registry of Durham County; that the City of Durham has no interest in said property or in the subject matter of this action.

14. That the condition of some of the buildings comprising Watts Hospital is such that repairs and improvements are immediately necessary; that recently part of one of the ceilings has become loosened, and that repairs and improvements are necessary on account of a "B" rating given the Dietary Department by the State of North Carolina and County of Durham Health Departments, and that permanent improvements, additions and repairs are now necessary and no funds are available for making same, all of the income being required for actual operating expenses.

That it will require the amount proposed to be expended at Watts Hospital from the proceeds of the bond issue to make the necessary repairs, improvements and additions, in addition to the amount allocated for use at Watts Hospital by the North Carolina Medical Care Commission, although the Medical Care Commission grant of $693,000.00 will not be available unless additional funds are raised for use at Watts Hospital.

15. That unless the needed repairs are made it is highly doubtful, and the Court is of the opinion that, Watts Hospital could not continue to operate as a hospital at which charity patients, or any appreciable number of charity patients, were received, in which event the beneficent purposes of the original donor of the trust would be destroyed, and would have failed almost completely.

16. That in view of the emergencies and exigencies which the Court finds to exist, and which are well known to trustees of Watts Hospital and the heirs of the late George W. Watts, the following plan has been proposed:

(a) Trustees of Watts Hospital would convey the Watts Hospital property described in paragraph 12 of the complaint to the County of

Durham upon condition that the property would continue to be used for hospital purposes and would bear the name Watts Hospital.

(b) The heirs at law of George W. Watts and Annie Louise Hill would convey any interest which they have or might have in said property to County of Durham upon condition that the same be used for hospital purposes and continue to bear the name Watts Hospital.

(c) Trustees of Lincoln Hospital would convey the Lincoln Hospital property to County of Durham upon condition that the property continue to be used for general hospital purposes.

(d) Durham Bank and Trust Company would be appointed as fiscal agent of Trustees of Watts Hospital to manage the Watts endowment, making the income therefrom available for the operation of Watts Hospital.

(e) Leases would be made from the County of Durham to the respective Trustees of Watts Hospital and Lincoln Hospital for the purpose of operating said hospitals.

(f) That all of the same be placed in escrow to be delivered upon the approval of the bond referendum under the terms of said original agreement, copy of which is attached to the complaint marked "Exhibit J."

17. That in furtherance of the above plan, and in order to insure compliance with the same, Trustees of Watts Hospital, the heirs of the late George W. Watts, and the late Annie Louise Hill, and the Trustees of Lincoln Hospital have executed to Durham Bank and Trust Company as Trustee in escrow agreement dated March 6, 1950, copy of which escrow agreement is attached to the complaint marked "Exhibit J," and Trustees of Watts Hospital have placed with Durham Bank and Trust Company as Trustee under said escrow agreement a deed to the County of Durham, copy of which is attached to the complaint marked "Exhibit I," and the heirs of the late George W. Watts and Annie Louise Hill have executed and delivered under said escrow agreement a deed to the County of Durham, a copy of which is attached to the complaint marked "Exhibit H," and Trustees of Lincoln Hospital have executed and delivered to Durham Bank and Trust Company as Trustee under said escrow agreement a deed to the Lincoln Hospital property, and Trustees of Watts Hospital have executed and delivered to Durham Bank and Trust Company as Fiscal Agent a fiscal agency agreement, copy of which is attached to the complaint marked "Exhibit K," to all of which reference is made and which are by reference incorporated in this judgment, and all of which should be ratified, affirmed and approved by the court.

18. That said plan represents the most feasible plan presented to the Court for the preservation of the terms of the trust of the late George W. Watts, and the Court finds that in order to prevent a destruction of the trust and to preserve and make it effective as near as may be possible in

accordance with the terms of the trust, it is necessary that said plan, or some similar plan, be put into operation.

19. That the plaintiffs have tendered to County of Durham said escrow agreement together with the instruments referred to therein, being:

(a) Proposed deed from John Sprunt Hill, *et als.,* to County of Durham.

(b) Proposed deed from Trustees of Watts Hospital to County of Durham.

(c) Proposed appointment from Trustees of Watts Hospital to Durham Bank and Trust Company as Fiscal Agent.

(d) Proposed deed from Trustees of Lincoln Hospital to County of Durham.

20. That the Commissioners for the County of Durham, realizing the necessity for a two million dollar hospital bond issue, have called a bond referendum to be submitted to the voters of Durham County on Saturday, the 22nd day of April, 1950, and have taken the necessary steps to provide for such bond election. However, the Commissioners for the County of Durham have taken the position that the County of Durham could not expend funds on Watts Hospital and Lincoln Hospital since, as a matter of law, the County of Durham was required to obtain a fee simple title to said property before any expenditures from the bond issue could be made upon either Lincoln Hospital or Watts Hospital, and have further taken the position that as to Watts Hospital they could not secure a fee simple title to the property for the reasons:

(a) That the Trustees of Watts Hospital and the Watts and Hill heirs would require that the County accept the property upon condition that the property be used for hospital purposes, and

(b) That the Hospital bear the name Watts Hospital, and

(c) For the further reason that Trustees of Watts Hospital and the heirs of the late George W. Watts and Annie Louise Hill do not have authority to convey the present Watts Hospital site freed from the terms of the deed of gift from George W. Watts and wife to Trustees of Watts Hospital.

21. That the County of Durham and Commissioners for the County of Durham have full authority under the law to accept said deeds from Trustees of Watts Hospital and the heirs of George W. Watts and Annie Louise Hill as proposed, with the restrictions that the property be used only for hospital purposes and that the hospital be known as Watts Hospital, with the provision that failure to comply with such conditions should cause the property to revert to Trustees of Watts Hospital, and at the same time would have the full legal authority to expend funds raised by the proposed bond issue on the Watts Hospital property; and

the Court finds that the said conditions that the property be used for hospital purposes and bear the name Watts Hospital are reasonable and proper, and the condition with reference to the use of the property for hospital purposes is necessary in view of the character of the original donation.

22. That the Court under its equitable powers has the authority to modify the terms of the original trust, and deems it necessary and advisable that this be done in such way as to permit and authorize the County of Durham to accept the proposed deeds and make expenditures provided by the bond issue in the event of a favorable vote by the citizens of the County of Durham on said referendum.

23. That it would be for the best interest of the County of Durham and all parties hereto that the orders hereinafter set forth be made by the Court.

24. That all parties having any vested interest in the property described in Paragraph 12 of the complaint and all parties who could possibly be affected are either in, or are represented in, Court.

25. That unusual circumstances and exigencies have arisen not contemplated by the late George W. Watts and which, had they been anticipated, would undoubtedly have been provided for, and in order to prevent the destruction of the trust and in order to preserve it as far as possible it is necessary that this Court in its equitable jurisdiction grant the relief imperatively required, and the following order entered in this case represents what in the opinion of the Court the original grantor of the trust would have dictated had he anticipated the emergencies which have arisen.

Now, Therefore, it is hereby ordered, considered, adjudged and decreed:

A. That the Endowment Indenture dated August 22, 1905, recorded in Deed Book 15, pages 440 and 441, Registry of Durham County (Exhibit A attached to the complaint) be modified as follows:

1. That the language contained in the third section thereof which reads as follows: "for the sick, at which board, attention and nursing shall be free to the indigent" be and the same is hereby deleted from said Endowment Indenture.

B. That the deed dated the 2nd day of December, 1909, recorded in Deed Book 40, page 371, Registry of Durham County (Exhibit B attached to the complaint) be modified as follows:

1. That the language contained in the first paragraph of the *habendum* clause of said deed, which reads as follows, be deleted therefrom: "at which no charge for board, attention or nursing shall be made to those unable to pay."

2. That the following language contained in paragraph 2 of said *habendum* clause be deleted: "for the sick, at which board, attention and nursing shall be free to the indigent."

C. That the deed recorded in Deed Book 47, at page 48, Registry of Durham County, dated April 24, 1913, (Exhibit C attached to the complaint) be modified as follows:

1. That the following language contained in two places in the *habendum* clause of said deed be deleted therefrom: "at which no charge for board, attention or nursing shall be made to those unable to pay."

D. That the deed recorded in Deed Book 61, page 333, Registry of Durham County, dated February 5, 1921, (Exhibit D attached to the complaint) be modified as follows:

1. That the following language contained in two places in the *habendum* clause of said deed be deleted: "at which no charge for board, attention or nursing shall be made to those unable to pay."

E. That, subject to said Escrow Agreement, Trustees of Watts Hospital be and they are hereby declared to be the owners in fee simple of the property described in the following deeds:

(1) Deed from George W. Watts and wife to Trustees of Watts Hospital recorded in Deed Book 15, pages 440 and 441, Registry of Durham County. (Exhibit A.)

(2) Deed from George W. Watts and wife, L. V. Watts, to Trustees of Watts Hospital recorded in Deed Book 40, page 371, Registry of Durham County. (Exhibit B.)

(3) Deed from George W. Watts and wife to Trustees of Watts Hospital recorded in Deed Book 47, page 48, Registry of Durham County. (Exhibit C.)

(4) Deed from George W. Watts and wife, Sara V. Watts, to Trustees of Watts Hospital recorded in Deed Book 61, page 333, Registry of Durham County. (Exhibit D.)

subject only to the conditions set forth in the deeds from Trustees of Watts Hospital and heirs of George W. Watts and Annie Louise Hill to County of Durham, said deeds being deposited in escrow and being the deeds marked "H" and "I" in the exhibits attached to the complaint.

F. That the deeds from Trustees of Watts Hospital and the heirs of George W. Watts and Annie Louise Hill deposited with the Escrow Agreement (Exhibits "H" and "I") would convey to the County of Durham a fee simple title to the property described therein, subject only to the conditions set forth in said deeds, and the County of Durham is hereby fully authorized and empowered to accept said deeds under the terms and conditions as set forth therein, freed from the restrictions and conditions contained in deed of George W. Watts and wife, L. V. Watts,

dated December 2, 1909, recorded in Deed Book 40, page 371, and referred to in the complaint as "Exhibit B."

G.   That the Board of County Commissioners for Durham County is fully authorized and empowered, in its discretion, to call a bond election for the purpose of issuing bonds for the improvement of Lincoln Hospital and Watts Hospital; and if said bond election is approved by the citizens of Durham County said Board of County Commissioners is fully authorized and empowered to supervise the expenditure of the net proceeds from the sale of any bonds voted in such bond election, either as a Board or under the terms of General Statutes 131-126.21; and said Board of County Commissioners is further fully authorized and empowered, under the terms of General Statutes 131-126.20 (c) and 131-126.26, to make operational leases for Lincoln and Watts Hospitals with the respective trustees thereof, upon such terms and for such period or periods as said Board of County Commissioners may deem advisable.

H.   The Board of County Commissioners for Durham County, Trustees of Watts Hospital, and any other parties to this action, are fully authorized and empowered to carry out the plan set forth herein for the conveyance of the Watts Hospital property and the Lincoln Hospital property to the County of Durham under the terms and conditions of said plan, and said parties are hereby fully authorized and empowered in doing so to take such steps as may be necessary to carry out the terms of said plan so long as the same are not inconsistent with the terms of this judgment.

I.   The approval of the Court is specifically given to the acceptance by the County Commissioners of said deeds from Trustees of Watts Hospital, the heirs of the late George W. Watts and Annie Louise Hill, and Trustees of Lincoln Hospital, as embraced in the Escrow Agreement herein elsewhere referred to, and the execution of said instruments together with the Escrow Agreement and the Fiscal Agency Agreement by Trustees of Watts Hospital is hereby in all respects approved.

J.   The net income from the Endowment known and referred to herein as the Watts Endowment shall be used exclusively for the purposes set forth in the original Endowment Indenture as recorded in Book of Deeds 15, at pages 440-441, Registry of Durham County, as modified by the terms of this judgment, and for no other purposes: Provided, however, such net income, or such portion thereof as might be required for such purpose, shall be expended in furnishing board, attention, and nursing to patients unable to pay for the same.

K.   That the Court costs of this action are hereby taxed against Trustees of Watts Hospital.

The defendants excepted to the judgment and appealed, assigning errors.

*Victor S. Bryant and Robert I. Lipton for plaintiffs, appellees.*

*Fuller, Reade, Umstead & Fuller for defendants, Durham County and the Board of Commissioners for the County of Durham, appellants.*

*A. R. Wilson for defendant, A. R. Wilson, Guardian ad Litem, appellant.*

ERVIN, J.   Equity looks at substance, and not form.  When subsequent changes in conditions not anticipated by the creator of a trust threaten the destruction of the trust and the loss of the trust estate, a court of equity has power to modify the terms of the trust to the extent necessary to preserve the trust estate and to effectuate the primary purpose of the creator of the trust.  *Hospital v. Cone, ante,* 292, 56 S.E. 2d 709; *Redwine v. Clodfelter;* 226 N.C. 366, 38 S.E. 2d 203; *Duffy v. Duffy,* 221 N.C. 521, 20 S.E. 2d 835; *Penick v. Bank,* 218 N.C. 686, 12 S.E. 2d 253; *Cutter v. Trust Co.,* 213 N.C. 686, 197 S.E. 542; 54 Am. Jur., Trusts, section 284.  This equitable jurisdiction resided in the court below; for the Superior Court possesses all of the powers exercised by it as a court of equity prior to 1868.  McIntosh: North Carolina Practice and Procedure in Civil Cases, section 62.

For all practical purposes, two trusts are involved in this action.  The subject matter of the first is the *Watts Hospital* property, and the subject matter of the second is the Watts Endowment property.

The findings of fact of the court make it manifest that drastic changes in conditions, which were entirely unforeseen at the time of the creation of the trusts, arose subsequent to the establishment of the trusts; that these changes in conditions created an emergency, which threatened the destruction of the trusts and the loss of the trust estates to the trustee and the beneficiaries of the trusts; and that in consequence modification of the terms of the trusts by the court was indispensable to the preservation of the trusts and the carrying out of the primary purposes of the creator of the trusts.  Moreover, both the findings of fact and the record as a whole compel the conclusion that the judgment modifying the terms of the trusts is well conceived to accomplish these laudable ends.

The circumstances in the record indicate beyond cavil that George W. Watts intended his charities to be as permanent and perpetual as any human institutions can be.  The corporate charter of the Trustees of Watts Hospital clearly discloses that the primary purpose motivating his gift of the hospital property to the Trustees was the establishment of a nonprofit hospital in Durham County "for the reception and treatment of persons who may need medical or surgical attendance during temporary sickness or injury."  Under the statutes originally enacted as Chapter 933 of the 1947 Session Laws and now codified as Article 13B of Chapter 131 of the General Statutes, Durham County has plenary

power to construct, operate, and maintain nonprofit hospital facilities. For this reason, the sanctioned conveyance of the Watts Hospital property to Durham County upon the condition "that the . . . property shall be used for hospital purposes" insures the preservation of the trust estate for the benefit of the ultimate beneficiaries of the trust and the carrying out of the primary purpose of the creator of the trust for all time so far as these things can be done by human foresight and ingenuity in an uncertain world.

When George W. Watts gave the Watts Endowment property to the Trustees of Watts Hospital, his primary intent was to earmark the net income arising from such property for the service of poor patients unable to pay Watts Hospital for their board, attention, and nursing. The judgment makes it certain that the net income arising from this property will be used for the benefit of persons answering this description in conformity to the primary purpose of the creator of the trust throughout the foreseeable future.

The construction, maintenance, and operation of a public hospital by a county is a public purpose for which funds may be provided by taxation under Article V, Section 3, of the Constitution. See: *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668, 113 A.L.R. 1195; *Burleson v. Spruce Pine,* 200 N.C. 30, 156 S.E. 241; *Nash v. Monroe,* 198 N.C. 306, 151 S.E. 634; *Armstrong v. Comrs.,* 185 N.C. 405, 117 S.E. 388. In consequence, "the cost of planning and acquiring, establishing, developing, constructing, enlarging, improving or equipping any hospital facility or the site thereof may be paid for . . . from the proceeds of the sale of bonds or other obligations" of a county under G.S. 131-126.23 if such action is first approved by a majority of the qualified voters of the county who shall vote on the proposition in an election conducted under the County Finance Act, *i.e.,* Article 9 of Chapter 153 of the General Statutes as amended by Section 8 of Chapter 497 of the 1949 Session Laws.

Where a county is authorized to issue its bonds for these purposes by a majority of the qualified voters voting on the proposition in an appropriate election, the proceeds of the bonds may be expended for such purposes under the supervision of the board of commissioners of the county, or under the supervision of some officer, or board, or agency of the county designated by the board of commissioners pursuant to G.S. 131-126.21. Besides, a county, which has acquired an existing hospital facility by purchase, gift, or otherwise, is expressly authorized by the statute to lease such facility to any nonprofit association or corporation for operation on such terms and subject to such conditions as will carry out the purposes of Article 13B of Chapter 131 of the General Statutes. G.S. 131-126.20 (c). Hence, the provisions of the judgment relating to

the execution of operational leases and the expenditure of the proceeds of any bonds issued under the statutes cited above are proper.

The deeds from the Trustees of Watts Hospital and the heirs and residuary devisees of George W. Watts and Annie Louise Hill convey to Durham County a base, qualified, or determinable fee. *Paul v. Willoughby,* 204 N.C. 595, 169 S.E. 226; *Henderson v. Power Co.,* 200 N.C. 443, 157 S.E. 425, 80 A.L.R. 497; *West v. Murphy,* 197 N.C. 488, 149 S.E. 731. Notwithstanding this fact, the court rightly authorized Durham County to accept these deeds. For all practical purposes, they vest in Durham County title to the Watts Hospital property in fee simple absolute; for the estate which they convey will endure forever unless Durham County voluntarily ceases to use the property for hospital purposes or voluntarily changes the name of the hospital standing thereon. Indeed, the statute does not make the acquisition of title by the county a condition precedent to the extension of aid. G.S. 131-126.26.

For the reasons given, the judgment of the trial court is
Affirmed.