JAMES F. HUGHEY v. POLIE Q. CLONINGER, GEORGE A. JENKINS, BUD
    BLACK, GENE CARSON, HARLEY B. GASTON, JR., ROBERT A.
    HEAVNER, AND CHARLES A. RHYNE, COUNTY COMMISSIONERS OF GASTON
    COUNTY; AND GASTON COUNTY

No. 7727SC702

(Filed 11 July 1978)

**Schools § 1; Taxation § 7.1— public purpose—private nonprofit dyslexia school**

Even though the Dyslexia School of North Carolina, Inc. as a nonprofit
corporation was engaged in a clearly benevolent activity, which would not be
constitutionally prohibited if provided through the public schools of Gaston
County, it nevertheless remained a private entity, and, as such, could not
receive appropriations and expenditures from the County's unappropriated
general fund as a constitutionally permissible *means* of achieving the desirable
and commendable end of assisting in the education of the dyslexic children of
Gaston County.

APPEAL by plaintiff from *Ervin, Judge.* Judgment entered 14
July 1977 in Superior Court, GASTON County. Heard in the Court
of Appeals 26 May 1978.

This action was brought by the plaintiff, James F. Hughey, a
citizen and taxpayer of Gaston County, to enjoin the appropria-
tion and expenditure by disbursement of public funds by the
Gaston County Commissioners to the Dyslexia School of North
Carolina, Inc. All facts set forth herein were stipulated by the
parties or uncontroverted.

On 15 January 1977, the Gaston County Commissioners ap-
propriated the sum of $47,068 to be disbursed directly to the
Dyslexia School of North Carolina, Inc., for the remainder of the
1976-1977 school year. The appropriated funds were to be drawn
by the County from its unappropriated general fund balance
which is a mixture of ad valorem taxes, fees and federal revenue
sharing funds.

The plaintiff instituted this action on 18 April 1977 alleging
that these appropriations and expenditures by Gaston County
were not authorized by statute and violated the Constitution of
North Carolina. The plaintiff prayed that the court grant both
temporary and permanent injunctive relief enjoining the defend-
ants from appropriating or disbursing any funds from the general
fund balance of Gaston County on behalf of the school.

By their answer, the defendants admitted all material allegations of the complaint and denied only those portions of the complaint amounting to conclusions of law. The defendants contended in their answer that the complaint failed to state a claim against them upon which relief could be granted. Therefore, they prayed that the plaintiff's action be dismissed. A hearing was held before the court for the purpose of allowing the defendants to show cause why a temporary restraining order and injunction should not be entered pending a determination of the issues presented. After conferring with counsel for both parties, however, the court determined that no funds had been disbursed to the school since 18 April 1977 and that no further appropriations would be disbursed to the school until the issue of their legality could be resolved. Counsel for the parties agreed that injunctive relief was unnecessary. Therefore, the court neither considered nor granted temporary or permanent injunctive relief.

The uncontroverted evidence indicated that, as of the filing of the plaintiff's complaint on 18 April 1977, Gaston County had disbursed directly to the school $25,000 of the $48,068 appropriated. The remainder of the funds appropriated have not been disbursed. The school has submitted a budget request for an additional appropriation of $113,000 for the 1977-1978 school year.

The Dyslexia School of North Carolina, Inc., is a nonprofit corporation organized under Chapter 55A of the General Statutes of North Carolina. The purpose of the school is "to operate exclusively for educational purposes and to furnish programs of instruction for children with dyslexia." The school is not a part of the public school system. It is, however, an approved non-public school certified by the North Carolina State Department of Public Instruction as a special school. This approval allows school-aged children to attend the school in lieu of the public schools without violation of compulsory school attendance requirements. It also qualifies students attending the school to receive direct educational expense grants from the State.

The school offers a strictly academic program which does not include vocational training. At the time this action was instituted, the school served seventy-three children, some of whom were from Gaston County. The school charges tuition to all of its students. Some of the funds appropriated by Gaston County to be

disbursed to the school were, however, used to reduce the tuition of Gaston County residents from $500 to $150 per student per semester.

Dyslexia is a generic classification descriptive of a group of learning disabilities occurring in several forms. These learning disabilities manifest themselves primarily in the academic area of the language arts. The public schools of Gaston County presently provide services for learning disabled children, including dyslexic children, through forty-eight full or part-time teachers trained in the area of learning disabilities.

On 31 May 1977 the Superintendent of the Gaston County Schools, Zane E. Eargle, filed applications with the State Department of Public Instruction seeking direct educational expense grants to dyslexic children in which he indicated that the public schools in Gaston County did not have enough teachers to adequately serve all its resident students with such learning disabilities. He also indicated that the Gaston County Board of Education would request additional local funds from the Gaston County Commissioners for four additional teachers trained in learning disabilities for the 1977-1978 school year. He expressed his opinion that these new positions would remove the necessity for these educational expense grants directly to individual children with learning disabilities in Gaston County during the 1977-1978 school year. The Dyslexia School of North Carolina, Inc., is classified as a special school by the State Department of Public Instruction and is thereby approved to receive, for special educational training, students who qualify for the direct individual educational expense grants available for such training.

All of the facts previously set forth herein were either specifically stipulated or uncontroverted. The parties entered a stipulation prior to the hearing of this case by the trial court on 6 June 1977 which resulted in the judgment from which the plaintiff appeals. At that time the parties stipulated that the hearing was a hearing on the merits before the trial court, and that the trial court could "determine all issues raised by the pleadings and the evidence and render judgment in or out of term of court in or out of the county, and that this was basically a question of law."

In its order of 14 July 1977, the trial court found facts essentially identical to those previously set forth herein and concluded

as a matter of law that the funds appropriated by Gaston County for expenditure by direct disbursement to the Dyslexia School of North Carolina, Inc., were for a public purpose. The trial court also concluded as a matter of law that the public schools of Gaston County did not have adequate personnel assigned in the area of learning disabilities to meet the educational needs of its children, and that the appropriation and direct disbursement of funds by the County to the school were to provide services for the educational needs of its children not available in the public schools. The trial court additionally concluded as a matter of law that the expenditure of funds from the appropriated sum of $48,068 by Gaston County "was in accordance with the Fiscal Control Act giving the County control over the expenditure of the funds."

Based upon its findings of fact and conclusions of law, the trial court ordered, *inter alia*, that the plaintiff's action be dismissed with costs taxed to the plaintiff. From this judgment, the plaintiff appealed.

*Roberts & Planer, P.A., by Joseph B. Roberts III, for plaintiff appellant.*

*Hollowell, Stott & Hollowell, by Grady B. Stott, for defendant appellees.*

*Tharrington, Smith & Hargrove, by George T. Rogister, Jr., for amicus curiae, North Carolina School Boards Association.*

*Chambers, Stein, Ferguson & Becton, P.A., by James C. Fuller, Jr., for amicus curiae, North Carolina Association of Educators.*

MITCHELL, Judge.

The plaintiff appellant assigns as error the trial court's conclusion as a matter of law that Gaston County could lawfully appropriate and expend public funds by direct disbursement to and for the Dyslexia School of North Carolina, Inc. In support of this assignment, the plaintiff refers us to numerous sections of the Constitution of North Carolina which he contends prohibit such appropriations and expenditures. We need consider only one.

The Constitution of North Carolina commands that: "The power of taxation shall be exercised . . . for public purposes only.

. . ." N.C. Const. art. V, § 2(1). This "public purpose" requirement acts as a limitation equally upon the power to tax and the power to appropriate and expend public funds. In *Mitchell v. Financing Authority*, 273 N.C. 137, 159 S.E. 2d 745 (1968), the Supreme Court of North Carolina expressly declared that:

> The power to appropriate money *from* the public treasury is no greater than the power to levy the tax which put the money in the treasury. Both powers are subject to the constitutional proscription that tax revenues may not be used for private individuals or corporations, no matter how benevolent. . . .
>
> . . . .
>
> A slide-rule definition to determine public purpose for all time cannot be formulated; the concept expands with the population, economy, scientific knowledge, and changing conditions. As people are brought closer together in congested areas, the public welfare requires governmental operation of facilities which were once considered exclusively private enterprises . . . and necessitates the expenditure of tax funds for purposes which, in an earlier day, were not classified as public. . . . Often public and private interests are so co-mingled that it is difficult to determine which predominates. It is clear, however, that for a use to be public its benefits must be in common and not for particular persons, interests, or estates; the ultimate net gain or advantage must be the public's as contradistinguished from that of an individual or private entity. . . . (citations omitted).

273 N.C. 143-144, 159 S.E. 2d 749-750.

Clearly, both appropriations and expenditures of public funds for the education of the citizens of North Carolina are for a public purpose. *Education Assistance Authority v. Bank*, 276 N.C. 576, 174 S.E. 2d 551 (1970). In determining whether the particular appropriations and expenditures by direct disbursement to the school in the case before us are for a "public purpose" in the constitutional sense, however, we must look to the *means* to be employed as well as the end to be attained. *Turner v. Reidsville*, 224 N.C. 42, 44, 29 S.E. 2d 211, 213 (1944). Here, the appropriations and expenditures by direct disbursements to and for a

private nonprofit corporation, although clearly an attempt to attain a benevolent and commendable end, constitute a primary benefit to the private entity itself. Of the seventy-three children enrolled in the school, those children from Gaston County who receive a tuition reduction are directly benefited by the appropriations and expenditures. Only a portion of the funds, however, are used for tuition reduction. Assuming the entire student body of the school to be comprised of students from Gaston County, which the record reveals it is not, the $350 reduction in tuition per student per semester would only amount to a total of $25,550 of the $48,068 appropriated for the spring semester of 1977. A minimum of $22,518, on the other hand, would go directly to benefit the private entity.

Even where, as here, it is clear that the promotion of the school and its program will be of advantage to the community and the public welfare, it is the character of the school as the object of the appropriations and expenditures which must determine their validity. For this reason, the Supreme Court of North Carolina has held that direct assistance to private entities such as this school, distinguishable from direct disbursements to students for educational purposes, may not be the *means* used to effect a public purpose. *See Stanley v. Department of Conservation and Development*, 284 N.C. 15, 34, 199 S.E. 2d 641, 653-654 (1973), *and Foster v. Medical Care Commission*, 283 N.C. 110, 195 S.E. 2d 517 (1973).

In *Foster* the Supreme Court of North Carolina held that tax funds could not be employed to finance a nonprofit hospital even though its primary purpose was the same public purpose served by publicly owned hospitals. Here the school serves the clearly benevolent and commendable purpose of providing educational assistance to dyslexic children. The public schools, which clearly could be used as a constitutionally permissible *means* for achieving this legitimate end, apparently lack sufficient teachers to provide for these children adequately. This lack does not, however, make the present case distinguishable from *Foster*. There, the private nonprofit hospital also would have provided a valuable public service not otherwise adequately available. We are, therefore, of the opinion that *Foster* is the controlling authority to be applied in the present case and requires us to find that the appropriations for and expenditures by disbursement to the

school do not serve a "public purpose" in the constitutional sense, as the private school may not be used as a legitimate *means* for achieving this end. Even though the school as a private nonprofit corporation is engaged in a clearly benevolent activity, which would not be constitutionally prohibited if provided through the public schools of Gaston County, it remains a private entity. As such it may not receive appropriations and expenditures from public funds as a constitutionally permissible *means* of achieving the desirable and commendable end of assisting in the education of the dyslexic children of Gaston County. *Stanley v. Department of Conservation and Development*, 284 N.C. 15, 34, 199 S.E. 2d 641, 653-654 (1973); *Turner v. Reidsville*, 224 N.C. 42, 44, 29 S.E. 2d 211, 213 (1944); *see also Wells v. Housing Authority*, 213 N.C. 744, 197 S.E. 693 (1938). The foregoing authorities require our holding that the trial court erred in its conclusion as a matter of law that the funds appropriated by Gaston County to the Dyslexia School of North Carolina, Inc., were for a "public purpose" in the constitutional sense.

Having determined that the appropriations and expenditures of the funds in question were not constitutionally permissible, we must also hold that the trial court erred in concluding that the expenditures of the funds here involved by Gaston County were in accordance with The Local Government Budget and Fiscal Control Act, G.S. 159-7 through G.S. 159-40. That act itself proscribes expenditures of revenues for purposes otherwise prohibited by law. G.S. 159-13(b)(4). As the expenditures of revenues by direct disbursements to and for the school were not constitutionally permissible, they were prohibited by the terms of the act. Therefore, the act does not tend to be brought into conflict with our holding in regard to the constitutionality of the appropriations and expenditures in this case.

The defendants have referred us to numerous other sections of the Constitution of North Carolina and the General Statutes as authority for the appropriations and expenditures for the school by Gaston County. Our holding that the appropriations and expenditures were not constitutionally permissible makes detailed analysis of these contentions unnecessary. Nevertheless, we have reviewed each and find, for various reasons, that none of the sections of the Constitution of North Carolina or the General

Statutes relied upon by the defendants authorized appropriations or expenditures such as those presented on these facts.

The judgment of the trial court is reversed, and this case is remanded to the Superior Court of Gaston County for entry of judgment granting a permanent injunction in accordance with the plaintiff's prayer for relief.

Reversed and remanded.

Judges PARKER and HEDRICK concur.