C. C. HUDSON v. CITY OF GREENSBORO, SOUTHERN RAILWAY COMPANY, NORTH CAROLINA RAILROAD COMPANY, AND GREENSBORO BANK AND TRUST COMPANY.

(Filed 26 May, 1923.)

1. **Constitutional Law — Municipal Corporations — Cities and Towns — Statutes—Depots—Railroads—Bonds—Taxation—Contracts—Trusts.**

   . A statute authorizing a city to issue its bonds and lend the proceeds of their sale to a railroad company to build a depot within its limits, when the question has been submitted to and approved by its voters, does not contravene the State Constitution, and is valid: as in this case, a bond issue by the city for the purpose and in full conformity with the provisions of the statute, running thirty years at not exceeding 6 per cent interest, under contract with the railroad company for the latter to convey all of its depot and track lands within the city to a trustee in trust, to be reconveyed to the railroad company upon its performance of the terms of the contract, and requiring the railroad company by maintaining a sinking fund to discharge the debt at maturity, with accrued interest, take care of the necessary repairs, and pay the taxes upon the property.

2. **Same—Public Interests—Courts—Legislative Discretion—Contracts— Consideration.**

   Upon the facts appearing of record on this appeal, *it is held* that the benefits that are expected to accrue to the city by the building and maintenance of a depot is within the scope of the public interest, for a public purpose, and is a valid consideration for the contract, and the question as to its effect upon the financial condition of the city in the uncertain future is one solely addressed to the discretion of the legislative branch of the State Government, and to the city acting in accordance therewith, with which the courts may not interfere.

APPEAL by plaintiff from *Harding, J.,* at April Term, 1923, of GUILFORD.

This was a proceeding to obtain an injunction against the city of Greensboro carrying out its contract with the Southern Railway Com-

pany to issue $1,300,000 in bonds for the purpose of loaning the same to the Southern Railway Company for the construction of a passenger station at Greensboro and an underpass, etc.

The General Assembly of North Carolina, at the Extra Session of 1920, passed an act, Private Laws, ch. 105, ratified 23 August, 1920, which authorized the city of Greensboro to issue bonds not to exceed $1,300,000, the proceeds of which were to be loaned for the construction of a station building, an underpass, etc., by the Southern Railway Company in accordance with plans to be agreed upon between the city and the company, the bonds to mature thirty years from date bearing not to exceed 6 per cent interest. The act further provided that the governing board of the city should call an election to submit the proposed contract and the question of the issue of the bonds as aforesaid to the qualified voters of the city, and that, if approved, the railroad company was to convey the necessary land free of all encumbrance to a trustee, to be held until the Southern Railway Company should, by monthly rentals, have paid the said trustee a sum of money sufficient to take care of the interest on the bonds issued for the purpose aforesaid and to provide a sinking fund to discharge all of said debt at maturity with accrued interest, and the railroad company was required to take care of the necessary repairs and pay taxes upon the property and upon the repayment of the sum advanced by the city, the trustee should reconvey the property to the railroad company.

On 11 April, 1922, an election was held in which the qualified voters of the city of Greensboro approved the proposed contract and authorized the issuing of the bonds and carrying out of the contract. It appears from the record that the number of qualified voters at said election was 3,428, of whom 2,145 voted to approve the action aforesaid, and 271 voted against it. The contract thus proposed and authorized was executed 12 February, 1923, and the construction work would have been commenced but for the intervention of the proceedings in this case. The Southern Railway Company has secured releases from the trustees in the four deeds of trust covering the property proposed to be released, and also a conveyance from its lessor, the North Carolina Railroad Company.

The court finds as a fact that no conveyance of title has yet been executed to the said Southern Railway Company, nor to the Greensboro Bank and Trust Company as trustee, by virtue of the aforesaid contract, but that it would have been executed and delivered but for the institution of this suit.

The following is the contract of the parties, and the act of the Legislature under which the contract was made and submitted to the people, the proceedings of the city council and the return of the election thereon and the map of the premises:

### AGREEMENT.

An agreement, made and entered into this 12 February, 1923, by and between city of Greensboro, a municipal corporation, organized and existing under and by virtue of the laws of the State of North Carolina, hereinafter for convenience styled "City," and Southern Railway Company, a corporation, organized and existing under and by virtue of the laws of the State of Virginia, qualified to engage in the business of common carrier in the State of North Carolina, hereinafter for convenience styled "railway company," and Greensboro Bank and Trust Company, a corporation, organized and existing under the laws of the State of North Carolina, hereinafter for convenience styled "trustee."

Witnesseth, That whereas the city desires to promote the general good, convenience, and safety of its citizens by constructing in the city of Greensboro, N. C., a passenger station, together with all necessary appurtenances thereto, and in connection therewith a certain underpass eliminating a dangerous grade crossing, all as more particularly hereinafter identified, which will promote the prosperity and general welfare of the community; and

Whereas, in order to secure the necessary authority to the city to effectuate said public purpose, the General Assembly of North Carolina passed and there was ratified on 23 August, 1920, "An act authorizing the city of Greensboro to issue bonds for the purpose of building a passenger station," said act being chapter 105 of the Private Laws of the General Assembly of North Carolina, Extra Session 1920, copy of which act is hereto attached, marked Exhibit "A," now referred to and made a part hereof; and

Whereas the right of the city to issue bonds as provided in said act has been secured by the approval of a majority of the qualified voters of said city determined at an election duly and legally called and held in the city on 11 April, 1922, the result of which election is shown by the certificate of the judges of said election hereto attached, marked Exhibit "B"; and

Whereas the railway company owns, controls, leases, and operates lines of railroad entering the city of Greensboro, N. C., and is engaged in the operation of passenger trains and the transportation of passengers thereon to and from the said city of Greensboro; and

Whereas, the railway company is willing to convey or have conveyed to said trustee upon the trusts hereinafter recited, title to the land upon which the said passenger station and its appurtenances is to be erected, and to enter into a rental contract for the use and occupancy of said station building and accessories in accordance with the terms hereof: Now, therefore, this agreement witnesseth:

### CITY'S COVENANTS.

That the city, for and in consideration of the covenants of the railway company and the trustee hereinafter expressed, hereby covenants and agrees:

1. That upon conveyance to Greensboro Bank and Trust Company, trustee, by Southern Railway Company, or at its direction, of the land hereinafter specifically described upon which the station is to be erected, with good title, free and clear from all encumbrances, satisfactory to the city, as shown by certificate of the mayor of the city to be attached to said trust deed, the city, through its duly authorized governing board, and by regular ordinance, will issue and deliver to the trustee, its "City of Greensboro—North Carolina Passenger Terminal Thirty Year Gold Bonds," authorized by the act of the General Assembly of North Carolina ratified on 23 August, 1920, hereinbefore referred to, in an aggregate amount of not exceeding one million, three hundred thousand dollars ($1,300,000) par value. Said bonds shall mature thirty years from the date thereof and shall bear interest at not exceeding six (6) per cent per annum, payable semiannually.

2. The city hereby agrees and binds itself at the meeting of its governing board, to be held at the time now fixed by law in each year, or which may hereafter be fixed as the time for levying the taxes of the city, or as soon thereafter as may be, during each year of the thirty-year term of said bonds, to levy a tax sufficient to pay the interest that may be then due and to provide that year's proportionate part of the sinking fund for the payment of the principal of said bonds at maturity, the amount of interest, and the amount to be paid into the sinking fund to be annually certified by the trustee to the governing body of the city: *Provided,* the tax shall be collected only when the trustee has not in hand from the rent agreed to be paid by the railway company funds with which to pay the interest and the yearly proportion of the sinking fund to retire the principal at maturity.

3. Such amount of said bonds, bearing interest at the rate fixed by the city, which shall not be in excess of six (6) per cent per annum, payable semiannually, so issued and delivered to the trustee, as it may be found necessary to sell to pay for the construction of said station and all of its appurtenances, together with the underpass, will be authenticated by the trustee and be by the city sold and disposed of to the best advantage at not less than par and the proceeds thereof, less the necessary costs of preparing, issuing, and selling the bonds, paid into the hands of the trustee, and shall be used by the trustee in payment for the construction of the passenger station and all appurtenances, including the underpass. The trustee shall pay out the money only on proper joint certificate of the chief engineer of the railway company and an

authorized representative of the city, as will be more particularly pro-
vided for in the contract and specifications to be entered into for the
construction of said passenger station and facilities.   If the sale of said
bonds in amount sufficient to cover the estimated cost of the construction
of said station and all of its appurtenances, together with the underpass,
shall not be sufficient to fully pay for same at the end of the said con-
struction, the trustee shall authenticate and the city shall sell and dispose
of an additional amount of said bonds sufficient to complete the payment
of all of said construction work, and should there be any balance left in
the hands of the trustee on final completion of the station and its appur-
tenances, together with the underpass, said balance shall be by the
trustee covered into the sinking fund for the retirement of the principal
of the bonds at maturity and a certificate thereof furnished the city and
the railway company by the trustee.

4. That upon the payment of the interest on said bonds and the pay-
ment of the principal at maturity and compliance by the railway com-
pany with its covenants herein contained, the city will release and
discharge any lien or claim whatsoever it may have to said station prop-
erty and its appurtenances, other than the underpass, which is to forever
remain a street of the city open to the use of the public and subject to
the city's control, and to that end will join the trustee in such convey-
ances as may be necessary to accomplish the conveyance of full and com-
plete title to the railway company, its successors or assigns, when all
obligations of the city in connection therewith are paid off.

## RAILWAY'S COVENANTS.

The railway company, in consideration of the covenants of the city
and trustee, hereby covenants and agrees:

5. That it will, upon notice from the governing board of the city that
the city has executed this contract and is authorized to issue the bonds
as herein provided, execute and deliver, or cause to be executed and
delivered, to Greensboro Bank and Trust Company, trustee, in trust for
the security of said bonds and the payment of the interest thereon, a
deed or deeds conveying good and sufficient title, free and clear from all
encumbrances, to the property in the city of Greensboro, county of
Guilford, State of North Carolina, particularly described as follows:

Beginning at the corner formed by the intersection of the south
boundary line of Depot Street with the east boundary line of South Elm
Street, and running thence

(1) Eastwardly along said south boundary line of Depot Street, a
distance of 290.1 feet, more or less, to the southwest corner of Depot and
South Davie streets; thence

(2) Southwardly along the west boundary line of South Davie Street,
a distance of 88.5 feet to a rail; thence

(3) Southwestwardly a distance of 312 feet, more or less, to a rail in the east boundary line of said South Elm Street; thence

(4) Northwardly along the said easterly boundary line South Elm Street, a distance of 190 feet, more or less, to the point or place of beginning, containing .93 acres, more or less.

And beginning at a point on the easterly boundary line of South Davie Street, 141.8 feet northwardly from the original center line of the North Carolina Railroad, measured along the said east boundary line of South Davie Street, and running thence

(1) Eastwardly along a line parallel with and at all points 12 feet south of the present northerly limit of the property of the railway company, a distance of 116.8 feet, more or less, to the westerly boundary line of Eckles Street produced; thence

(2) Southwardly along the said westerly boundary line of Eckles Street produced a distance of 63.5 feet; thence

(3) Southwestwardly a distance of 124 feet, more or less, to a point in the easterly boundary line of said South Davie Street, 45.3 feet northwardly from the said original center line of said North Carolina Railroad, measured along said street line; thence

(4) Northwardly along said east boundary line of South Davie Street a distance of 106.5 feet, more or less, to the point or place of beginning, containing .23 of an acre, more or less.

6. That upon notice to the railway company from the trustee that the bonds in an amount necessary and required for the construction of the said passenger station and appurtenances, underpass, etc., have been legally authorized and duly issued by the city and are in the hands of the trustee for certification and delivery to a purchaser or purchasers named by the city at a price satisfactory to the parties hereto, which price will net to the city the estimated cost of all of said construction, the railway company shall prepare and have presented to the trustee for execution a contract or contracts with a reliable contractor or contractors satisfactory to the city and the railway company for the construction of the station building, its approaches, plazas, entrances, ways, streets, necessary tracks, and the underpass under Davie Street, in accordance with plans, copy of which are hereto attached, marked Exhibit "C," which plans have been agreed upon between the city and the railway company, which agreement is evidenced by the approval of said plans by the city manager for the city and by an executive officer of the railway company for the railway company, and in accordance with specifications hereafter to be agreed upon between the city and the railway company. The work of construction shall be done under the direction and control of the railway company, but in accordance with the plans and specifications agreed on, as above set forth. The construction work shall begin

within ninety days from the sale of the first installment of bonds. The entire construction work herein provided for shall be completed at a cost to the city not in excess of its authorized bond issue for this purpose. The contract for the work and construction so undertaken shall provide for its completion for occupancy within not less than twenty-four months from the signing of the contract, with the usual penalties incorporated in the contract for failure to comply.

7. The railway company agrees that it will use the said passenger station building, tracks, and appurtenances constructed hereunder for the handling of all its passenger train business (including trains containing mail, baggage or express, as well as passenger cars) in and through the city of Greensboro, N. C., for and during the full term hereby created; that is to say, for thirty years, beginning on the date of the execution and certification of the bonds and thence next ensuing; and this undertaking shall be binding upon the parties hereto and their respective successors and assigns.

8. That for the use of the said passenger station and terminal, with all appurtenances thereto, for the transaction of its passenger terminal business in the said city of Greensboro, for and during the life of the said bonds of the city of Greensboro, it will pay as rent therefor the following sums of money and comply with the following covenants, namely:

(1) Pay to the trustee, in lawful money of the United States of America, in monthly installments (the first monthly installment being due the last day of the month the bonds are dated and certified, in order to take care of interest during construction) an annual sum which will be equivalent to the interest on the amount of said bonds outstanding, and will pay to the said trustee monthly of such further sum as will provide a sinking fund which when invested by the trustee in the manner herein provided shall be sufficient to pay off and discharge at maturity said bonds issued and sold, but not exceeding a total sum of one million three hundred thousand dollars ($1,300,000).

(2) The railway company will, at its own expense, properly furnish and equip said station after it is constructed, and will pay for all necessary repairs, replacements, renewals, and upkeep on said passenger station and its appurtenances, excluding the underpass, and will maintain, preserve and keep the same in proper repair, and will pay and discharge any and all taxes, assessments, or other charges whatsoever which may be lawfully levied, assessed, or imposed during the term hereby granted by any government or lawful authority whatsoever upon the premises hereby leased, or any part thereof, or upon the income of the same, it being the intent and meaning hereof that all governmental charges upon the aforesaid property, or the income therefrom, shall be

assumed and satisfied by the railway company. Nothing herein contained shall be construed to exempt the aforesaid property from taxation.

(3) Will pay the necessary expenses devolving on the said trustee in the execution and conducting of its trust.

(4) The railway company shall and will during the life of this agreement keep the said passenger station building insured against any loss or damage by fire, to an amount equal to the value of the fire destructible part of said building, or such an amount, if less, as said building will bear. The insurance shall be in company or companies to be approved by the trustee, its successors or assigns, the loss, if any, to be payable to the trustee, its successors or assigns, in trust for the holders of the bonds above mentioned, and the policy or policies covering such insurance shall be delivered to such trustee; all insurance premiums shall and will be paid by the railway company and in default of the railway company keeping the building so insured, the trustee, its successors or assigns, may take out such insurance from time to time in amount as above provided, not exceeding the unpaid portion of said bonds, less any sum in the sinking fund in the hands of the trustee applicable to the retirement of said bonds at maturity, and the railway company shall and will pay to the trustee the amount of such premium or premiums so paid, with interest at 6 per cent per annum from time of payment. Upon the payment of any insurance money on account of losses covered by such insurance, it shall be held and retained by the trustee, its successors or assigns, until the replacement or repair of said passenger station building covered by said insurance, and upon proof satisfactory to the trustee, its successors or assigns, of the proper replacement or repair of said building, the duty to replace or repair which is upon the railway company, said insurance money so collected shall be paid to the railway company.

### TRUSTEE'S COVENANTS.

The trustee, in consideration of the covenants of the city and of the railway company, hereby covenants and agrees:

9. That it will, as trustee, accept conveyance of the said property referred to in paragraph four above and hold the same upon the conditions and terms in said conveyance set forth.

10. That it will, as trustee, accept delivery of the said bonds referred to in paragraph one hereof. That it will certify and authenticate only such an amount of said bonds as may be necessary to pay for the cost of the said stations, facilities, underpass, etc.

11. That it will execute a contract for the construction of said station facilities, appurtenances, underpass, etc., as herein provided for, the same to be constructed in accordance with the plans and specifications to be approved by the city and the railway company, as above set forth.

That it will pay to the contractor, on certificate calling for said payment, duly approved by the city and the chief engineer of the railway company, such sum or sums of money as may come due when the same come due under the contract hereinabove provided for.

12. That it will execute an agreement and lease of said station building and its appurtenances to the railway company in accordance with the provisions of the act of the General Assembly of North Carolina ratified on 23 August, 1920, hereinbefore referred to, and upon terms consistent therewith to be agreed upon between the parties hereto, leasing unto the railway company, and its successors and assigns, the right to use for a term of thirty (30) years, beginning the date said bonds bear date, for the accommodation of its passenger traffic in the city of Greensboro, the following:

All and singular the passenger station building situate in and upon parcels of land hereinbefore described, and to be conveyed to the trustee by the railway company, or at its direction, together with the tracks constructed or to be constructed leading into and used in connection with said station building, and together with all of the houses, offices, baggage, and waiting rooms, platforms, and appurtenances of whatsoever nature to the said station building, and tracks appertaining thereto which may be necessary for the movement of passenger trains, and the use and convenience of passengers, and the handling of baggage, mail, and express, and the transaction of passenger business at the said city of Greensboro.

The city will join in the said lease if that be desired.

13. That it will invest at stated periods, not in excess of three months apart, unless a longer period is agreed to in writing by the parties hereto, all moneys coming into its hands under this agreement for the purposes of the sinking fund. The said investment shall be in the bonds issued by the city of Greensboro under its agreement and said act of 23 August, 1920, in so far as they may be purchaseable at and for a price not in excess of 105. If such bonds cannot be acquired, then the trustee shall invest such funds, at periods not greater than three months, in securities of the Government of the United States of America or of the State of North Carolina or of the city of Greensboro, N. C., or of the county of Guilford, N. C., except that upon recommendation by the trustee in writing, and consent thereto by the city and the railway company, the trustee may invest in other approved securities. The agreement to so invest shall specifically name the security or securities. The bonds as paid shall be canceled by the trustee and surrendered to the city and a certificate showing cancellation and surrender furnished by the trustee to the railway company.

14. Until payment by the railway company, its successors or assigns, to the trustee, its successors or assigns, and to the holders of the bonds

above provided for, of the entire cost of the said station building, facilities, underpass, etc., and until all the obligations of the railway company hereunder shall have been fully complied with and performed, title to the ground and the station and said facilities shall not pass to or vest in the Railway Company, but shall remain in the trustee, its successors or assigns in the trust, to perform and enforce this agreement for the benefit of the bonds above referred to.

15. That it will, upon the payment by the railway company of all the aforesaid bonds in full, together with the interest thereon, in the manner and form herein provided, and upon the performance by the railway company of all the obligations and agreements herein contained, execute and deliver to the railway company, or as it may direct, at the expense of the railway company, all necessary deeds of conveyance which may be reasonably required by the railway company as evidence of its title to said land, the station building, and all appurtenances thereon.

In witness whereof the parties hereto have caused their respective corporate names to be hereunto signed in triplicate by their respective officers duly authorized and their respective seals to be hereunto affixed, duly attested by their respective officers duly authorized, all on the day and year first above written.

CITY OF GREENSBORO, NORTH CAROLINA,

[SEAL]   By CLAUDE KISER,
*Mayor.*

Attest:   B. T. WARD, *City Clerk.*

SOUTHERN RAILWAY COMPANY,

[SEAL]   By L. E. JEFFRIES,
*Vice-President.*

Attest:   W. S. CAMP, *Assistant Secretary.*

GREENSBORO BANK AND TRUST COMPANY,

[SEAL]   By J. W. FRY,

Attest:   W. M. RIDENHOUR.                              *President.*

### EXHIBIT "A."

AN ACT AUTHORIZING THE CITY OF GREENSBORO TO ISSUE BONDS FOR THE
PURPOSE OF BUILDING A PASSENGER STATION.

*The General Assembly of North Carolina do enact:*

SECTION 1. That for the purpose of constructing in the city of Greensboro, North Carolina, a suitable passenger station to be used and operated by the Southern Railway Company on terms hereinafter pro-

vided, the city of Greensboro is authorized to issue, sell, or otherwise dispose of its bonds not to exceed one million three hundred thousand dollars ($1,300,000), par value, and use the proceeds therefrom in the construction of said station building, its approaches, plazas, entrances, ways, streets, necessary tracks, in accordance with plans to be agreed on between said city and said railway company; said bonds maturing thirty (30) years from date, bearing interest at a rate not to exceed six per cent per annum, evidenced by coupons due semiannually, principal and interest payable at such place and of such denomination and form as may be determined by ordinance of said city.

SEC. 2. Said bonds, or any part thereof, shall be issued and constitute a valid obligation of said city only on approval of a majority of the qualified voters of said city, to be determined at an election to be called as herein directed.

SEC. 3. The governing board of the city shall call said election by ordinance, which ordinance shall be introduced at least one week before its final passage, and if amended at any meeting it stands for passage, can be with said amendment adopted at said meeting. Such ordinance shall provide a new or special registration of voters for said election, shall designate the precincts and voting places and name the registrars and judges of said election, provide the form and wording of the ballot to be used, and the ordinance published as said board may order. That the qualification of voters, the holding and conduct of said election, canvass of returns, and declaration of result and all other matters pertaining to said election shall be under rules and regulations provided for elections of members of the board of commissioners of the city of Greensboro. If at said election a majority of the qualified voters shall vote for bonds, then the governing board of said city shall issue, sell, or otherwise dispose of said bonds, or so much thereof as may be necessary, and use the proceeds for the construction of the passenger station and accessories as aforesaid. That the work shall be done under the direction and control of the Southern Railway Company, who shall execute same in accordance with plans and specifications agreed on between the parties, as aforesaid.

SEC. 4. That before any of said bonds shall be sold, or offered for sale, the Southern Railway shall cause to be conveyed to a trustee selected by the governing board of the said city and the Southern Railway Company the land on which said station is to be erected, with good title, free and clear from all encumbrances, and said Southern Railway Company shall make and execute a contract with said city and said trustee providing in substance as follows: That the lands conveyed to the trustee, the station building, and all other improvements thereon shall be held by the trustee to secure the payment of said bonds, principal and interest as aforesaid; that the Southern Railway Company shall

properly furnish and equip said station after its construction, pay for all necessary repairs and upkeep, and pay to said trustee for the benefits of said city, for the use and occupation of said station building and accessories, by a monthly rental, a sum of money sufficient to pay the interest on said bonds, and provide·a sinking fund, which, when invested by the trustee, shall be sufficient to pay off and discharge said one million three hundred thousand dollars ($1,300,000) of bonds at maturity; that on payment of the principal and interest of said bonds in full, said trustee shall convey title to said land and passenger station to the Southern Railway Company, its successors or assigns, and said city of Greensboro shall release and discharge any lien or claim it may have on said property; and said contract may contain such· other provisions for the furtherance and protection of the agreement between the parties thereto as they may determine.

SEC. 5. That said board of commissioners shall annually levy a tax sufficient to pay the interest on said bonds and to provide a sinking fund for the payment of the principal thereof at maturity: *Provided,* that said levy shall not be made if said Southern Railway Company shall monthly pay to said trustee an amount sufficient to pay said interest and to provide for said sinking fund with which to pay said bonds at maturity.

SEC. 6. That the provisions of chapter one hundred and thirty-eight of the Laws of one thousand nine hundred and seventeen, or any amendment thereof, or the provisions of section two thousand nine hundred and seventy-seven of the Revisal of nineteen hundred and five limiting the right of cities to 10 per cent of the assessed valuation of real and personal property shall not apply to or in any way affect the validity of the bonds authorized by this act, or the payment thereof, nor shall the amount of said bonds outstanding be computed by said city in making any estimate of its liability under said section two thousand nine hundred and seventy-seven of said Revisal.

SEC. 7. That all laws and clauses of laws in conflict with this act are hereby repealed.

SEC. 8. That this act shall be in force from and after its ratification.

### EXHIBIT "B."

EXTRACTS FROM MINUTES OF THE CITY COUNCIL OF GREENSBORO, N. C.

GREENSBORO, N. C., Monday, 24 April, 1922.

*Regular Meeting.*

Council met with all members present, to wit: Brooks, Grimsley, Hiatt, Kiser, Mendenhall, Price, and White.

Councilman Brooks moved that the report of the judges of election for the election held on 11 April to submit to the voters of the city

question of issuing $1,300,000 passenger station bonds be received and ordered spread upon the minutes. Upon this motion the roll was called as follows: Ayes—Brooks, Grimsley, Hiatt, Kiser, Mendenhall, Price and White. Nays—None.

REPORT.

STATE OF NORTH CAROLINA—CITY OF GREENSBORO.

The undersigned, being the registrars and poll holders for Gilmer and Morehead precincts in the city above named, for the special election held on 11 April, 1922, at which was submitted to voters of the city "An ordinance to authorize the issuance of $1,300,000 passenger station bonds, and to submit the same to the vote of the people," do hereby certify that we met at the City Hall in Greensboro, at 10 o'clock a. m., on this 12 April, 1922, and formed the canvassing board for said election, as provided by section 41 of the charter of said city.

T. G. McLean was elected chairman and J. R. Cutchin was elected secretary.

We then proceeded to receive and tabulate the number of qualified voters for said election and the votes cast in said election, which we find and declare to have been as follows, to wit:

| | Number of Qualified Voters | Votes for Said Ordinance | Votes Against Ordinance |
|---|---|---|---|
| Gilmer Precinct | 1585 | 995 | 122 |
| Morehead Precinct | 1843 | 1150 | 149 |
| Totals | 3428 | 2145 | 271 |

We therefore declare the result of said election to be that said ordinance has been approved by a majority of the qualified voters of said city for said election; and that the bonds described in said ordinance have been authorized and approved in said election by a majority of the qualified voters of said city.

Witness our hands and seals, this 12 April, 1922.

Gilmer Precinct:

T. G. McLean, *Registrar.* [SEAL]

RICHARD WINSTEAD, JR. [SEAL]

R. A. GILMER, *Poll Holder.* [SEAL]

Morehead Precinct:

J. L. TYSOR, *Registrar.* [SEAL]

J. R. CUTCHIN. [SEAL]

H. T. MARTIN, *Poll Holder.* [SEAL]

I, B. T. Ward, city clerk of the city of Greensboro, hereby certify that the foregoing is a true copy of so much of the proceedings of the city council of the city of Greensboro at a regular meeting held on

Monday, 24 April, 1922, as relate to the report of the judges of election for the election held on 11 April, 1922, to submit to the voters of the city of Greensboro the question of issuing $1,300,000 passenger station bonds, this transcript having been copied by me from the official minutes of said meeting as recorded in volume 9, page 613, of the records.

Witness my hand and the seal of said city, this 12 February, 1923.

B. T. WARD, *City Clerk.* [SEAL]

Upon the hearing the court adjudged that the act of the Legislature was constitutional, that the contract and the issue of bonds had been duly approved by the popular vote, and were valid, and denied the application for an injunction. Appeal by plaintiff.

*A. Wayland Cooke for plaintiff.*

*E. L. Brooks and B. L. Fentress for the city of Greensboro.*

*Wilson & Frazier and Manly, Hendren & Womble for Southern Railway Company and North Carolina Railroad Company.*

*R. D. Douglas for Greensboro Bank and Trust Company.*

CLARK, C. J. The court properly held that there was no constitutional inhibition against the act of the General Assembly of North Carolina authorizing the city of Greensboro to issue bonds for the purpose of building a passenger station and underpass, etc., as specifically set forth and provided by Private Laws, Extra Session 1920, ch. 105, and that the contract between the city of Greensboro and other defendant was in accordance with the terms of said act.

The qualified voters of the city of Greensboro, to whom under the act the proposition was submitted, had the right to determine, as they have done by a large majority of the registered voters, that the contract between the city and the railroad company should be made and the bonded indebtedness therein contemplated created, and having so elected, their action is not subject to judicial review.

It was within the scope of the powers of the Legislature to enact the statute in question. The contract was made strictly in accordance with the terms of the statute, and it and the issue of bonds authorized thereby have been ratified at the ballot box as provided by the statute. There being no constitutional prohibition the matter is purely one of public policy.

On full and careful examination of the terms of the contract (set out in the record as "Exhibit B") between the city of Greensboro and the Southern Railway Company upon mutual considerations from each to the other, and the benefits that are expected to accrue to the city which are within the scope of the public interests, we find that the undertaking is for a public purpose. The parties were duly authorized by legislative

enactment to make and enter into the contract presented for our consideration and to perform the obligations therein assumed.

When the trustees, under the various deeds of trust, have executed and delivered to the Southern Railway Company the releases proposed and the North Carolina Railroad Company has executed its proposed conveyance to the Southern Railway Company and all have been duly recorded, then, in that event, the Southern Railroad Company will be authorized to convey to the trust company a good title in fee simple to the two lots of land in question, clear and free of all encumbrances. When the Southern Railway Company has executed the proposed deed of trust upon the two lots of land in question, as provided in the contract, the city of Greensboro can issue its bonds as provided by the several acts of the General Assembly and the terms of contract. Said bonds, when so issued, will be a valid and outstanding obligation of the city and the parties to the contract.

The case was very fully and ably argued before us by counsel representing all the parties at interest, both by the parties to the contract and by the plaintiff opposing the constitutionality of the act and the validity of the contract. After full consideration, we have reached the same conclusion as his Honor.

It was earnestly argued before us that the proposition that the city of Greensboro should loan this fund would impair its credit, that the issue of over a million dollars in bonds by a city for the purposes recited was not only novel, and, indeed, unprecedented, but might prove disastrous in certain contingencies in the uncertain future, and that the precedent thus set, if followed to any extent, would not serve the public interest. But these are not matters which are confided to this branch of the government.

The legislative authority of the State, acting within its authority and violating no prohibition in the Constitution, in its wisdom saw fit to enact this statute, which authorized the contract that is presented in this record, and the parties thereto, the city of Greensboro and the Southern Railway Company, with the assent of the North Carolina Railroad Company, have drawn up a contract within the terms authorized by this statute and the qualified voters of the city of Greensboro have endorsed the action of their representative body, and at the ballot box, the vote being regularly and properly taken in the manner provided by the statute, have ratified and confirmed the contract and have directed the issue of the bonds. They have assumed the responsibility, and whether the proposition shall prove to be a wise and a safe one was a matter which the Legislature and the city of Greensboro had a right to determine, and they have done so.

The judgment of his Honor is

Affirmed.