IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-818

 Filed: 2 May 2017

Mecklenburg County, No. 15 CVS 1076

WIDENI77, Plaintiff

 v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, and I-77 MOBILITY
PARTNERS LLC, and STATE OF NORTH CAROLINA, Defendants

 Appeal by plaintiff from order entered 24 February 2016 by Judge W. Osmond

Smith III in Mecklenburg County Superior Court. Heard in the Court of Appeals

8 February 2017.

 Arnold & Smith, PLLC, by Paul A. Tharp and Matthew R. Arnold, for plaintiff.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Scott T.
 Slusser, for the North Carolina Department of Transportation and the State of
 North Carolina.

 Gibson, Dunn & Crutcher LLP, by Mitchell A. Karlan and Jerilin Buzzetta, and
 Parker Poe Adams & Bernstein LLP, by Michael G. Adams and Morgan H.
 Rogers, for I-77 Mobility Partners LLC.

 CALABRIA, Judge.

 WidenI77 (“plaintiff”) appeals from an order granting summary judgment in

favor of the North Carolina Department of Transportation (“NCDOT”), I-77 Mobility

Partners LLC (“Mobility”), and the State of North Carolina (“State”) (collectively

referred to as “defendants”) and dismissing plaintiff’s claims with prejudice. For the

reasons stated herein, we affirm the order of the trial court.
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 I. Background

 On 26 June 2014, NCDOT and Mobility, a Delaware limited liability company,

entered into a comprehensive agreement (the “Comprehensive Agreement”) for the I-

77 HOT Lanes Project (the “Project”). The I-77 corridor is “one of the most congested

corridors in the [S]tate” and the Project offered a “comprehensive congestion

management solution for approximately [twenty-six] miles of the I-77 corridor

through the use of HOV3+ policy and managed lanes and supports future expansion

of transit.” The Comprehensive Agreement was a product of the State’s “desires to

facilitate private sector investment and participation in the development of the

State’s transportation system via public-private partnership agreements[]” pursuant

to N.C. Gen. Stat. § 136-18(39) et seq. (“the P3 Statute”).

 The P3 Statute provides, in pertinent part, that the NCDOT is vested with the

power to

 enter into partnership agreements with private entities,
 and authorized political subdivisions to finance, by tolls,
 contracts, and other financing methods authorized by law,
 the cost of acquiring, constructing, equipping, maintaining,
 and operating transportation infrastructure in this State,
 and to plan, design, develop, acquire, construct, equip,
 maintain, and operate transportation infrastructure in this
 State.

N.C. Gen. Stat. § 136-18(39) (2015).

 -2-
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Through the Comprehensive Agreement, NCDOT granted Mobility “the

exclusive right, and [Mobility] accepts the obligation, to finance, develop, design,

construct, operate and maintain the Project[.]” This included the exclusive right to

impose tolls and incidental charges upon the users of the High Occupancy Toll

(“HOT”) lanes; to establish, modify, and adjust the rate of such tolls and incidental

charges in accordance with law; and to enforce and collect the tolls and incidental

charges from the users of the HOT lanes in accordance with the terms and conditions

of the Comprehensive Agreement.

 On 20 January 2015, plaintiff filed a “Complaint for Declaratory Judgment and

Preliminary and Permanent Injunctive Relief.” Plaintiff sought a declaration as to

the constitutionality of the P3 Statute and the Comprehensive Agreement between

the NCDOT and Mobility. Plaintiff’s arguments included the following, inter alia:

the General Assembly unconstitutionally delegated authority to the NCDOT to set

toll rates without adequate standards and safeguards for which to exercise that

power, to contract with Mobility and allow an unlimited rate of return on investment,

and to contract with Mobility and allow the NCDOT and the State to compensate

Mobility for its tax liabilities; violation of taxing power; violation of the public purpose

doctrine; violation of due process; contrary to public policy; lack of authority; illegal

contract; and motion for preliminary and permanent injunction.

 -3-
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 On 9 March 2015, the trial court entered an order finding that plaintiff “ha[d]

not shown a sufficient likelihood of success on the merits to justify granting a

preliminary injunction” and denying plaintiff’s motion for a preliminary injunction.

 On 15 June 2015, Mobility filed a motion for summary judgment. On

19 June 2015, the State and the NCDOT filed a motion for summary judgment. On

13 November 2015, plaintiff filed a motion for summary judgment.

 On 24 February 2016, the trial court entered an order concluding as follows:

 4. As to the Motions for Summary Judgment filed by each
 party, it should be noted that it is not within the
 province, function or duty of the Court to determine the
 desirability or wisdom of the legislation or the contract
 at issue. These policy decisions are within the purview
 of the legislature and the North Carolina Department
 of Transportation. The subject legislation is not
 unconstitutional as applied, nor is the contract
 unlawful.

 5. As to the Motions for Summary Judgment filed by each
 party, there is no genuine issue as to any material fact,
 that Defendants are entitled to a judgment as a matter
 of law, and that Plaintiff is not entitled to judgment as
 a matter of law.

Accordingly, the trial court granted defendants’ motions for summary judgment and

denied plaintiff’s motion for summary judgment. Plaintiff’s claims were dismissed

with prejudice.

 On 22 March 2016, plaintiff filed notice of appeal.

 II. Standard of Review

 -4-
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 “Our standard of review of an appeal from summary judgment is de novo[.]” In

re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted). “In

ruling on a motion for summary judgment the evidence is viewed in the light most

favorable to the non-moving party.” Hinson v. Hinson, 80 N.C. App. 561, 563, 343

S.E.2d 266, 268 (1986) (citation omitted). Rule 56 of the North Carolina Rules of Civil

Procedure provides that summary judgment shall be granted “if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

any party is entitled to a judgment as a matter of law.” N.C. Gen. Stat. § 1A-1, Rule

56(c) (2015).

 The showing required for summary judgment may be
 accomplished by proving an essential element of the
 opposing party’s claim does not exist, cannot be proven at
 trial, or would be barred by an affirmative defense . . . or
 by showing through discovery that the opposing party
 cannot produce evidence to support an essential element of
 her claim[.]

Dobson v. Harris, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

 III. Discussion

 On appeal, plaintiff argues that the trial court erred by: (A) concluding that

the North Carolina General Assembly’s delegation of power to the NCDOT and

NCDOT’s arrangement with Mobility did not constitute an unconstitutional

delegation of power; (B) concluding that the expenditure by the NCDOT and the State

 -5-
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

served a public purpose and was constitutional under Article V, Section 2(1) of the

North Carolina Constitution; (C) concluding that the Comprehensive Agreement did

not violate the Turnpike Statute; and (D) concluding that the North Carolina General

Assembly did not unconstitutionally delegate its authority to tax to the NCDOT in

violation of Article I, Section 8 and Article II, Section 23 of the North Carolina

Constitution and the Due Process Clause of the United States Constitution. We

address each argument in turn.

 A. Delegation of Power

 Plaintiff argues that the trial court erred by concluding that the General

Assembly’s delegation of power to the NCDOT and NCDOT’s arrangement with

Mobility did not constitute an unconstitutional delegation of power. Specifically,

plaintiff contends that the General Assembly’s delegation of power pursuant to the

P3 Statute “features an absolute, unfettered, unlimited, unilateral and therefore

unconstitutional delegation of authority to an agency and private company.” Plaintiff

maintains that the P3 Statute grants unto Mobility the absolute authority to set toll

rates without any meaningful input or control by the NCDOT or General Assembly.

We are not convinced by plaintiff’s arguments.

 “It is well settled in this State that the courts have the power, and it is their

duty in proper cases, to declare an act of the General Assembly unconstitutional - but

it must be plainly and clearly the case. If there is any reasonable doubt, it will be

 -6-
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

resolved in favor of the lawful exercise of their powers by the representatives of the

people.” McIntyre v. Clarkson, 254 N.C. 510, 515, 119 S.E.2d 888, 892 (1961) (citation

omitted). “In passing upon the constitutionality of a legislative act it is not for this

Court to judge its wisdom and expediency. These matters are the province of the

General Assembly. Rather, it is the Court’s duty to determine whether the legislative

act in question exceeds constitutional limitation or prohibition.” Adams v. N.C. Dep’t

of Natural & Econ. Res., 295 N.C. 683, 690, 249 S.E.2d 402, 406 (1978).

 In our determination of whether the P3 Statute violates the rule that the

General Assembly cannot delegate its power to legislate, we are directed by Adams.

 Although this Court noted in Adams that the legislature
 may not abdicate its power to make laws [or] delegate its
 supreme legislative power to any . . . coordinate branch or
 to any agency which it may create, we also concluded that
 strict adherence to ideal notions of the non-delegation
 doctrine would unduly hamper the General Assembly in
 the exercise of its constitutionally vested powers[.]

Conner v. N.C. Council of State, 365 N.C. 242, 250-51, 716 S.E.2d 836, 842 (2011)

(citations and internal quotation marks omitted) (emphasis in original).

 [T]he constitutional inhibition against delegating
 legislative authority does not preclude the legislature from
 transferring adjudicative and rule-making powers to
 administrative bodies provided such transfers are
 accompanied by adequate guiding standards to govern the
 exercise of the delegated powers.

 ....

 In the search for adequate guiding standards the primary

 -7-
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 sources of legislative guidance are declarations by the
 General Assembly of the legislative goals and policies
 which an agency is to apply when exercising its delegated
 powers. We have noted that such declarations need be only
 as specific as the circumstances permit. When there is an
 obvious need for expertise in the achievement of legislative
 goals the General Assembly is not required to lay down a
 detailed agenda covering every conceivable problem which
 might arise in the implementation of the legislation. It is
 enough if general policies and standards have been
 articulated which are sufficient to provide direction to an
 administrative body possessing the expertise to adapt the
 legislative goals to varying circumstances.

 Additionally, in determining whether a particular
 delegation of authority is supported by adequate guiding
 standards it is permissible to consider whether the
 authority vested in the agency is subject to procedural
 safeguards. A key purpose of the adequate guiding
 standards test is to insure that the decision-making by the
 agency is not arbitrary and unreasoned.

Adams, 295 N.C. at 697-98, 249 S.E.2d at 410-11 (internal citations and quotation

marks omitted).

 In the case sub judice, the P3 Statute provides as follows, in pertinent part:

 The said Department of Transportation is vested with the
 following powers:

 ....

 (39) To enter into partnership agreements with private
 entities . . . to finance, by tolls, contracts, and other
 financing methods authorized by law, the cost of acquiring,
 constructing, equipping, maintaining, and operating
 transportation infrastructure in this State, and to plan,
 design, develop, acquire, construct, equip, maintain, and
 operate transportation infrastructure in this State. An

 -8-
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

agreement entered into under this subdivision requires the
concurrence of the Board of Transportation. The
Department shall report to the Chairs of the Joint
Legislative Transportation Oversight Committee, the
Chairs of the House of Representatives Appropriations
Subcommittee on Transportation, and the Chairs of the
Senate Appropriations Committee on the Department of
Transportation, at the same time it notifies the Board of
Transportation of any proposed agreement under this
subdivision. . . .

....

(39a) a. The Department of Transportation . . . may
enter into up to three agreements with a private entity as
provided under subdivision (39) of this section for which
the provisions of this section apply.

 b. A private entity or its contractors must
provide performance and payment security in the form and
in the amount determined by the Department of
Transportation. . . .

....

 d. Article 6H of Chapter 136 of the General
Statutes shall apply to the Department of Transportation
and to projects undertaken by the Department of
Transportation under subdivision (39) of this section. The
Department may assign its authority under [Article 6H of
Chapter 136 of the General Statutes] to fix, revise, charge,
retain, enforce, and collect tolls and fees to the private
entity.

 e. Any contract under this subdivision or under
Article 6H of this Chapter for the development,
construction, maintenance, or operation of a project shall
provide for revenue sharing, if applicable, between the
private party and the Department, and revenues derived
from such project may be used as set forth in G.S. 136-

 -9-
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

89.188(a), notwithstanding the provisions of G.S. 136-
89.188(d). . . .

....

f. Agreements entered into under this subdivision
shall comply with the following additional provisions:
 1. The Department shall solicit proposals for
 agreements.
 2. Agreement shall be limited to no more than 50
 years from the date of the beginning of
 operations on the toll facility.
 3. Notwithstanding the provisions of G.S. 136-
 89.183(a)(5), all initial tolls or fees to be charged
 by a private entity shall be reviewed by the
 Turnpike Authority Board. Prior to setting toll
 rates, either a set rate or a minimum and
 maximum rate set by the private entity, the
 private entity shall hold a public hearing on the
 toll rates, including an explanation of the toll
 setting methodology, in accordance with
 guidelines for the hearing developed by the
 Department. After tolls go into effect, the
 private entity shall report to the Turnpike
 Authority Board 30 days prior to any increase in
 toll rates or change in the toll setting
 methodology by the private entity from the
 previous toll rates or toll setting methodology
 last reported to the Turnpike Authority Board.

 ....

 6. The Turnpike Authority annual report under
 G.S. 136-89.193 shall include reporting on all
 revenue collections associated with projects
 subject to this subdivision under the Turnpike
 Authority.

 7. The Department shall develop standards for
 entering into comprehensive agreements with

 - 10 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 private entities under the authority of this
 subdivision and report those standards to the
 Joint Legislative Transportation Oversight
 Committee on or before October 1, 2013.

N.C. Gen. Stat. §§ 136-18(39), (39a)(a)-(b), (39a)(d)-(e), and (39a)(f) (2015).

 Guided by the principles stated in Adams, we hold that the legislative goals

and policies set forth in the P3 Statute, combined with its procedural safeguards, are

sufficient to withstand a constitutional challenge.

 We are mindful that “there [exists] a strong presumption that enactments of

the General Assembly are constitutional.” Town of Spruce Pine v. Avery County, 346

N.C. 787, 792, 488 S.E.2d 144, 147 (1997).

 The General Assembly has provided that it is the policy that:

 [t]he [NCDOT] shall develop and maintain a statewide
 system of roads, highways, and other transportation
 systems commensurate with the needs of the State as a
 whole and it shall not sacrifice the general statewide
 interest to the purely local desires of any particular area.

N.C. Gen. Stat. § 136-44.1 (2015). Article 6H of Chapter 136 of the General Statutes,

applied to the NCDOT and to projects undertaken by the NCDOT under the P3

Statute pursuant to N.C. Gen. Stat. § 136-18(39a)(d), states that:

 The General Assembly finds that the existing State road
 system is becoming increasingly congested and
 overburdened with traffic in many areas of the State; that
 the sharp surge of vehicle miles traveled is overwhelming
 the State’s ability to build and pay for adequate road
 improvements; and that an adequate answer to this
 challenge will require the State to be innovative and utilize

 - 11 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 several new approaches to transportation improvements in
 North Carolina.

 Toll funding of highway and bridge construction is feasible
 in North Carolina and can contribute to addressing the
 critical transportation needs of the State. A toll program
 can speed the implementation of needed transportation
 improvements by funding some projects with tolls.

N.C. Gen. Stat. § 136-89.180 (2015).

 It is clear that achievement of this stated legislative policy and the fixing,

revising, charging, retaining, enforcing, and collecting of tolls require expertise. It

would be impractical to require the General Assembly to provide a “detailed agenda

covering every conceivable problem which might arise in the implementation of the

legislation.” Adams, 295 N.C. at 698, 249 S.E.2d at 411; see Bring v. North Carolina

State Bar, 348 N.C. 655, 659, 501 S.E.2d 907, 910 (1998) (stating that “[i]t is not

practical for the General Assembly to micromanage the making of rules for the Board

[of Law Examiners] such as what law schools are to be approved. The directions given

by the legislature are as specific as the circumstances require”). Our Supreme Court

has previously stated that “[a]s a practical matter tolls require little legislative

regulation. If they are unreasonably high, motorists will boycott the turnpike; if they

are unreasonably low, the bondholders will register their objections in some

appropriate manner.” N.C. Turnpike Authority v. Pine Island, Inc., 265 N.C. 109,

115, 143 S.E.2d 319, 324 (1965).

 - 12 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Here, the General Assembly has enacted specific guiding standards within the

P3 Statute to govern the NCDOT’s exercise of the delegated powers. For example,

the following standards, inter alia, exist to provide direction to the NCDOT for the

Project: the NCDOT may assign its authority to fix, revise, charge, retain, enforce,

and collect tolls and fees to the private entity under N.C. Gen. Stat. § 136-18(39a)(d);

the private entity or its contractors must provide performance and payment security

in the form and in the amount determined by the NCDOT under N.C. Gen. Stat. §

136-18(39a)(b); any contract under the P3 Statute shall provide for revenue sharing,

if applicable, between the private party and the NCDOT pursuant to N.C. Gen. Stat.

§ 136-18(39a)(e); the NCDOT must solicit proposals for agreements under N.C. Gen.

Stat. § 136-18(39a)(f)(1); the agreement shall be limited to no more than fifty years

under N.C. Gen. Stat. § 136-18(39a)(f)(2); and the NCDOT shall develop standards

for entering into comprehensive agreements with private entities under the P3

Statute and report those standards to the Joint Legislative Transportation Oversight

Committee pursuant to N.C. Gen. Stat. § 136-18(39a)(f)(7). Considering the

preceding guidelines, we hold that the directions given by the General Assembly are

as specific as the circumstances require.

 Furthermore, we hold that there are adequate procedural safeguards in the P3

Statute to ensure adherence to the legislative standards. N.C. Gen. Stat. § 136-

18(39a)(f)(3) provides that all initial tolls or fees to be charged by a private entity

 - 13 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

shall be reviewed by the Turnpike Authority Board. Prior to setting toll rates, the

private entity must hold a public hearing on the toll rates, including an explanation

of the toll setting methodology, in accordance with hearing guidelines developed by

the NCDOT. N.C. Gen. Stat. § 136-18(39a)(f)(3). After the tolls go into effect, Mobility

must report to the Turnpike Authority Board thirty days prior to any increase in toll

rates or change in the toll setting methodology from the previous toll rates or toll

setting methodology last reported to the Turnpike Authority Board. Id. N.C. Gen.

Stat. § 136-18(39a)(f)(5) also states that sixty days prior to the signing of a concession

agreement subject to the P3 Statute, the NCDOT must report to the Joint Legislative

Oversight Committee, providing such things as a description of the project, number

of years the tolls will be in place, and demonstrated ability of the project team to

deliver the project. N.C. Gen. Stat. § 136-18(39a)(f)(5). These procedural safeguards,

inter alia, ensure that the NCDOT carries out the Project consistent with the policies

of the General Assembly.

 Based on the foregoing, we conclude that there are adequate guiding standards

and procedural safeguards in place to regulate the exercise of authority for this

Project. Accordingly, we hold that the trial court did not err by concluding that the

General Assembly’s delegation of power to the NCDOT constituted a constitutional

delegation of power.

 B. Public Purpose

 - 14 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Plaintiff’s second argument on appeal is that the trial court erred by concluding

that the Project’s expenditures constituted a public purpose pursuant to Article V,

Section 2(1) of the North Carolina Constitution. Plaintiff relies on the holding in

Foster v. North Carolina Medical Care Commission, 283 N.C. 110, 195 S.E.2d 517

(1973), for his contentions.

 Article V, Section 2(1) of the North Carolina Constitution provides that “[t]he

power of taxation shall be exercised in a just and equitable manner, for public

purposes only, and shall never be surrendered, suspended, or contracted away.

Although the constitutional language speaks of the ‘power of taxation,’ the limitation

has not been confined to government use of tax revenues.” Madison Cablevision, Inc.

v. City of Morganton, 325 N.C. 634, 643, 386 S.E.2d 200, 205 (1989).

 “The initial responsibility for determining what is and what is not a public

purpose rests with the legislature; its determinations are entitled to great weight.”

Id. at 644-45, 386 S.E.2d at 206. “[T]he presumption favors constitutionality.

Reasonable doubt must be resolved in favor of the validity of the act.” Maready v.

City of Winston-Salem, 342 N.C. 708, 714, 467 S.E.2d 615, 619 (1996) (citations

omitted).

 The General Assembly’s adoption of the P3 Statute leaves no doubt that our

legislature has determined that the NCDOT’s partnership agreements with private

entities to finance the cost of acquiring, constructing, equipping, maintaining, and

 - 15 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

operating transportation infrastructure in this State is a public purpose within the

meaning of Article V, Section 2(1) of the North Carolina Constitution. However, “[i]t

is the duty and prerogative of this Court to make the ultimate determination of

whether the activity or enterprise is for a purpose forbidden by the Constitution of

the state.” Madison Cablevision, 325 N.C. at 645, 386 S.E.2d at 206.

 Our Supreme Court has stated that:

 [a] slide-rule definition to determine public purpose for all
 time cannot be formulated; the concept expands with the
 population, economy, scientific knowledge, and changing
 conditions. As people are brought closer together in
 congested areas, the public welfare requires governmental
 operation of facilities which were once considered
 exclusively private enterprises and necessitates the
 expenditure of tax funds for purposes which, in an earlier
 day, were not classified as public. Often public and private
 interests are so co-mingled that it is difficult to determine
 which predominates. It is clear, however, that for a use to
 be public its benefits must be in common and not for
 particular persons, interests, or estates; the ultimate net
 gain or advantage must be the public’s as
 contradistinguished from that of an individual or private
 entity.

Martin v. North Carolina Housing Corp., 277 N.C. 29, 43, 175 S.E.2d 665, 672-73

(1970) (internal citations and quotation marks omitted). Our Courts

 ha[ve] not specifically defined public purpose but rather
 ha[ve] expressly declined to confine public purpose by
 judicial definition[, leaving] each case to be determined by
 its own peculiar circumstances as from time to time it
 arises. Two guiding principles have been established for
 determining [whether a government expenditure] is for a
 public purpose: (1) it involves a reasonable connection with

 - 16 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 the convenience and necessity of the particular
 municipality, and (2) the activity benefits the public
 generally, as opposed to special interests or persons[.]

Madison Cablevision, 325 N.C. at 646, 386 S.E.2d at 207 (internal citations and

quotation marks omitted). We apply these foregoing principles to the present case.

 As to the first prong of this test, “whether an activity is within the appropriate

scope of governmental involvement and is reasonably related to communal needs may

be evaluated by determining how similar the activity is to others which this Court

has held to be within the permissible realm of governmental action.” Maready, 342

N.C. at 722, 467 S.E.2d at 624.

 Numerous cases demonstrate the spectrum of facilities and activities which

have been deemed to constitute a public purpose. Aid to railroad: Wood v.

Commissioners of Oxford, 97 N.C. 227, 2 S.E. 653 (1887); Airport facilities:

Greensboro-High Point Airport Auth. v. Johnson, 226 N.C. 1, 36 S.E.2d 803 (1946);

Port Terminal Facilities: Webb v. Port Comm’n of Morehead City, 205 N.C. 663, 172

S.E. 377 (1934); Railway Terminal Facilities: Hudson v. City of Greensboro, 185 N.C.

502, 117 S.E. 629 (1923); Air Cargo Facilities: Piedmont Triad Airport Auth. v.

Urbine, 354 N.C. 336, 554 S.E.2d 331 (2001). These cases establish that providing

public transportation infrastructure has long been held to be within the permissible

scope of governmental action.

 As to the second prong of the Madison Cablevision test,

 - 17 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 activities are considered constitutional so long as they
 primarily benefit the public and not a private party: It is
 not necessary, in order that a use may be regarded as
 public, that it should be for the use and benefit of every
 citizen in the community. Moreover, an expenditure does
 not lose its public purpose merely because it involves a
 private actor. Generally, if an act will promote the welfare
 of a state or a local government and its citizens, it is for a
 public purpose.

Peacock v. Shinn, 139 N.C. App. 487, 493-94, 533 S.E.2d 842, 847 (2000) (internal

citations and quotation marks omitted) (emphasis in original).

 Keeping these principals in mind, the expenditure in the present case clearly

serves a public purpose. The General Assembly recognized that the State’s road

system was becoming increasingly congested and overburdened with traffic. The

legislature sought to alleviate the transportation needs of the State by authorizing

the NCDOT to enter into agreements with private entities to finance transportation

infrastructure in this State pursuant to the P3 Statute. The expenditure the P3

Statute authorizes should “provide immediate travel time reliability along I-77 from

Uptown Charlotte to the Lake Norman area[,]” a stated purpose of the Project.

Although Mobility will finance, construct, operate, and maintain the Project, gaining

incidental private benefit, the government expenditure primarily benefits the public.

Mobility’s involvement as a private actor and the possibility that not every citizen in

the community may use the Project’s toll lanes do not negate the public purpose of

the expenditure.

 - 18 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Plaintiff cites to the holding in Foster and argues that the facts before us are

“more constitutionally troubling[.]” In Foster, the North Carolina Medical Care

Commission Hospital Facilities Act, enacted in 1971 and found in N.C. Gen. Stat. §§

131-138 to 131-162, was challenged. Foster, 283 N.C. at 113-14, 195 S.E.2d at 520.

The act in question vested in the North Carolina Medical Care Commission the

authority to effectuate a plan to issue revenue bonds to finance construction of public

and private hospital facilities. Id. at 115-16, 195 S.E.2d at 521-22. The Foster Court

noted that while it was “well settled that the expenditure of tax funds for the

construction of a hospital, to be owned and operated by the State, a county, a city,

town or other political subdivision of the State, is an expenditure for a public

purpose[,]” it also recognized that “[i]t does not necessarily follow . . . that the

construction and operation of the privately owned hospital is for a public purpose,

within the meaning of the constitutional limitation upon the use of tax funds.” Id. at

125, 195 S.E.2d at 527. The Court reasoned that “[w]hile the Act now before us

provides for ownership of the acquired property by a public agency until the bonds

issued to finance the contemplated construction are retired, the Act has no purpose

separate and apart from the operation by and ultimate conveyance of the hospital

facility to the lessee thereof.” Id. at 127, 195 S.E.2d at 528. Accordingly, the Court

held that “the expenditure of public funds raised by taxation to finance, or facilitate

the financing of, the construction of a hospital facility to be privately operated,

 - 19 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

managed and controlled is not an expenditure for a public purpose” and was

prohibited by Article V, Section 2(1) of the North Carolina Constitution. Id. at 127,

195 S.E.2d at 528-29.

 We find Foster distinguishable. In Foster, the North Carolina Supreme Court

held that there was no purpose separate from the operation by and ultimate

conveyance of the hospital facility to the lessee. Once the bonds were paid, the North

Carolina Medical Care Commission was to convey title to such facility to the lessee,

a private entity. Here, the Project is to provide travel time reliability and Mobility’s

private benefit is incidental to the public purpose. Under Article 2 of the

Comprehensive Agreement, all of the infrastructure constructed by Mobility will be

owned by the State. Mobility has “no fee title, leasehold estate, possessory interest,

permit, easement or other real property interest of any kind in or to the Project or the

Project Right of Way” and Mobility’s property interests are “limited to contract rights

constituting intangible personal property (and not real estate interests).”

Furthermore, the Comprehensive Agreement limits Mobility’s role in the Project to

fifty years.

 For the reasons stated above, we hold that the trial court did not err by

concluding that the Project’s expenditures constituted a public purpose pursuant to

Article V, Section 2(1) of the North Carolina Constitution.

 C. Turnpike Statute

 - 20 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Plaintiff’s third argument on appeal is that the trial court erred by failing to

conclude that the Comprehensive Agreement violated the Turnpike Statute.

 First, plaintiff contends that Mobility’s design plan for the Project violates N.C.

Gen. Stat. § 136-89.199 by reducing the number of existing non-toll general purpose

lanes from four to three.

 N.C. Gen. Stat. § 136-89.199 provides as follows:

 Notwithstanding any other provision of this Article, the
 Authority may designate one or more lanes of any highway,
 or portion thereof, within the State, including lanes that
 may previously have been designated as HOV lanes under
 G.S. 20-146.2, as high-occupancy toll (HOT) or other type
 of managed lanes; provided, however, that such
 designation shall not reduce the number of existing non-toll
 general purpose lanes. In making such designations, the
 Authority shall specify the high-occupancy requirement or
 other conditions for use of such lanes, which may include
 restricting vehicle types, access controls, or the payment of
 tolls for vehicles that do not meet the high-occupancy
 requirements or conditions for use.

N.C. Gen. Stat. § 136-89.199 (2015) (emphasis added).

 A review of the Comprehensive Agreement establishes that plaintiff’s

argument fails. The Comprehensive Agreement explicitly states that the Project will

not reduce the number of existing non-toll general purpose lanes.

 Developer shall design and construct the Project to provide
 at a minimum the same number of Existing General
 Purpose Lanes within the Existing ROW as of the Proposal
 Due Date. Developer shall not eliminate, reduce the width
 of or otherwise permanently restrict access to existing
 ramps and loops.

 - 21 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Next, plaintiff argues that the Comprehensive Agreement violates N.C. Gen.

Stat. § 136-89.183(5) and is therefore void for illegality. Plaintiff contends that while

N.C. Gen. Stat. § 136-89.183(5) requires review by the Board of Transportation, Joint

Legislative Transportation Oversight Committee, and Joint Legislative Commission

on Governmental Operations thirty days prior to the effective date of any toll or fee,

the Comprehensive Agreement fails to require the same. Plaintiff’s argument is

misplaced.

 N.C. Gen. Stat. § 136-89.183(a)(5) gives the Turnpike Authority power “[t]o fix,

revise, charge, retain, enforce, and collect tolls and fees for the use of Turnpike

Projects” and requires that “[t]hirty days prior to the effective date of any toll or fee

. . . the Authority shall submit a description of the proposed toll or fee to the Board of

Transportation, the Joint Legislative Transportation Oversight Committee and the

Joint Legislative Commission on Governmental Operations for review.” However,

N.C. Gen. Stat. § 136-89.183(a)(5) is not applicable to this case. The P3 Statute

unambiguously states that:

 Notwithstanding the provisions of G.S. 136-89.183(a)(5), all
 initial tolls or fees to be charged by a private entity shall
 be reviewed by the Turnpike Authority Board. Prior to
 setting toll rates, either a set rate or a minimum and
 maximum rate set by the private entity, the private entity
 shall hold a public hearing on the toll rates, including an
 explanation of the toll setting methodology, in accordance
 with guidelines for the hearing developed by the
 Department.

 - 22 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

N.C. Gen. Stat. § 136-18(39a)(f)(3) (emphasis added). Thus, while N.C. Gen. Stat. §

136-89.183(a)(5) may apply to some tolls of the North Carolina Turnpike Authority,

it does not apply to the Project at issue in this case.

 Accordingly, we reject plaintiff’s argument that the trial court erred by failing

to conclude that the Comprehensive Agreement violated the Turnpike Statute.

 D. Authority to Tax

 In its last argument on appeal, plaintiff asserts that the trial court erred by

failing to conclude that the General Assembly unconstitutionally delegated its

authority to tax to the NCDOT, in violation of Article I, Section 8 and Article II,

Section 23 of the North Carolina Constitution and the Due Process Clause of the

United States Constitution. Specifically, plaintiff argues that while the North

Carolina Constitution “forbids the delegation by the General Assembly to a non-

elected body the power to impose or forgive taxes[,]” the legislature has granted unto

Mobility the authority to impose and collect taxes. Furthermore, plaintiff contends

that it was “denied due process in the manner in which these tax liabilities were

imposed upon it[.]”

 Plaintiff’s entire argument is premised on an issue that has already been

decided by our Supreme Court. In North Carolina Turnpike Authority, the Supreme

Court stated that:

 Tolls are not taxes. A person uses a toll road at his option;

 - 23 -
 WIDENI77 V. NC DEP’T OF TRANSP.

 Opinion of the Court

 if he does not use it, he pays no toll. Taxes are levied for
 the support of government, and their amount is regulated
 by its necessities. Tolls are the compensation for the use of
 another’s property or improvements made, and their
 amount is determined by the cost of the property or
 improvements.

North Carolina Turnpike Authority, 265 N.C. at 116-17, 143 S.E.2d at 325 (citations

and quotation marks omitted). Because tolls do not constitute a tax within the

meaning of the Constitution, the limitations of Article I, Section 8 and Article II,

Section 23 of the North Carolina Constitution do not apply and plaintiff’s due process

argument is similarly without merit.

 IV. Conclusion

 For the reasons stated above, we affirm the order of the trial court, granting

summary judgment in favor of defendants.

 AFFIRMED.

 Judges McCULLOUGH and INMAN concur.

 Judge Douglas McCullough concurred in this opinion prior to 24 April 2017.

 - 24 -